CHRISTIAN W. STENGEL

*v.*

MARY E. SERGEANT et al.

[Decided February 26th, 1908.]

1. Communications of a principal to his agent, which are simply intended as a delegation of power or instruction to the agent, but which the principal gives the agent no authority to deliver, have not the force of evidence of a contract in favor of the third party.

2. After defendant had written several letters to her agent instructing him to sell her property for a specified price, the agent wrote her that several had declined her proposition, but that he was dealing with one who would pay a price less than that specified. She wired that she would sell for a sum between the specified and offered prices if the sale could be made before a certain time. The agent sent the telegram to the third person, who replied that he would not increase his offer, asking the agent to submit it again, and nothing more. This the agent did, advising defendant to accept the offer, but she, instead of accepting, wired a third price at which she would sell.—*Held*, in a suit by the third person for specific performance, that the letters and telegrams of defendant were mere instructions to her agent as to terms of sale, and not communications intended directly for complainant, or to be delivered to. him either as evidence of contract or otherwise.

3. In a suit for specific performance of a contract to sell real estate, where the contract relied upon consists of a series of communications between defendant and her agent, and a letter from the complainant to the agent containing an offer for the property, the connection of the letter with defendant's communication cannot, as against defendant and for the purpose of making out a contract signed by her and within the statute of frauds, be proved by the parol evidence of the agent and complainant, where such letter is not referred to in any of the defendant's subsequent communications.

4. In a suit for specific performance of a contract to sell real estate, the written agreement relied upon consisting of a series of letters, parol evidence was inadmissible to show who the vendee was.

5. In a suit for specific performance of a contract to sell real estate, the written agreement relied upon consisted of a series of communications between defendant and her agent, and a letter from complainant to the agent containing an' offer for the property, but was defective because no connection appeared between the letter and communications, and the latter disclosed no purchaser.—*Held*, that the subsequent receipt of a payment on the contract given by the agent in defendant's name, and referring to complainant as the purchaser, is not evidence against defendant on the question whether the writings constituted a sufficient contract of sale by memoranda signed by defendant herself; he not being her agent for the purpose of making such subsequent admissions in reference to her own previous contract.

6. The employment of a broker to sell lands—that is, to procure purchasers—does not of itself or *prima facie* confer authority to bind the owner to sell by a contract in writing, and such authority is not usually to be inferred from the use by the principal and agent in that connection of the terms "for sale" or "to sell" and the like; such words in that connection usually meaning no more than to negotiate a sale by finding a purchaser upon satisfactory terms.

7. Any parol evidence relied on to establish the authority of a broker to make a binding contract must be clear and decisive.

8. After defendant had written several letters to her agent instructing him to sell her property for a specified price, the agent wrote her that several had declined her proposition, but that he was dealing with one who would pay a price less than that specified. She wired that she would sell for a sum between the specified and offered prices, if the sale could be made before a certain time. The agent sent the telegram to the third person, who replied that he would not increase his offer, asking the agent to submit it again, and nothing more. This the agent did, advising defendant to accept the offer, but she, instead of accepting, wired a third price at which she would sell. Finally, upon the agent's informing her that he could do no better than the price offered, she telegraphed him that she would sell for such price, but would only pay half the commissions, and asked him to wire in case of acceptance.— *Held*, that defendant's letters and telegrams did not clearly authorize the agent to make himself a contract of sale, binding on the principal, even on the terms given therein.

9. The simple authority of a broker to sell, even if he had the power to execute the contract of sale, could not authorize an agreement to sell with full covenants of warranty, inasmuch as a purchaser, under an agreement to convey, while he is entitled to a clear title, is not entitled to covenants of warranty unless the vendor has so stipulated.

10. A broker's authority to sell certain land for a specified sum did not authorize an agreement to sell for a part of the price in cash, the balance to be represented by a mortgage on the premises.

11. Mutuality in the specific performance of contracts is one of the essential equitable rules, and, although unilateral contracts are enforced, against the party signing, when intentionally made in that form by the party signing, the court exercises its discretion as to specific performance of such contracts with great caution, and views somewhat narrowly the conduct of the party claiming the benefit of his unilateral right to make the contract absolute.

12. A unilateral contract becomes binding on the party who has not signed only by the filing of a bill for specific performance, and up to that time he is free from any equitable obligation.

13. A broker employed to sell or procure a purchaser does not earn his commissions by procuring persons to sign an option to purchase which does not bind them to purchase. .

14. A broker, having authority to sell certain land and to execute the contract of sale, sold the land, and accepted a partial payment, for which he gave a receipt acknowledging the payment on account, reciting his agreement to sell and convey for a specified sum, and setting out the manner and time of payment. The receipt was signed by the broker for the principal. Subjoined thereto was the following form : "I hereby agree to purchase the above property upon the terms and conditions named"— but it was not signed by the purchaser. The purchaser's failure to sign was without the principal's knowledge.—*Held*, that the broker's authority did not authorize the sale as evidenced by the receipt; it being a uni-lateral contract binding only against the principal, and not against the purchaser, for which reason specific performance will not lie against the principal.

15. Where a broker was negotiating with plaintiff for the sale of de-fendant's land, and defendant, refusing to accept plaintiff's offer, wired the broker that she would sell for the amount named by plaintiff pro-vided the latter paid half the commissions, and defendant intended the telegram to be delivered to plaintiff, the latter could not have specific performance, unless he accepted the new terms, including commissions; the contract before acceptance being unilateral.

On bill for specific performance. Heard on bill, answer, repli-cation and proofs.

*Messrs. Johnson & Boggs,* for the complainant.

*Mr. John A. Miller,* for the defendants.

EMERY, V. C.

This is a bill filed by the purchaser, Mr. Stengel, against the vendor, Mrs. Sergeant, for the specific performance of a written contract of sale for dock property in Newark, and a subsequent purchaser, the Clark company, is also defendant. In the bill, as well as at the hearing, complainant's right to relief is based on one or the other of two alleged contracts, one claimed to have been made with him by the vendor herself, and evidenced by letters and telegrams signed by her, and the other claimed to be a contract subsequent to these letters and telegrams, signed in her name by her agent, Mr. Schlesinger, a real estate broker in whose hands the property had been placed for rent and sale. Mrs. Sergeant's answer denies making any contract herself, and also denies the authority of her agent to sign a contract for her, and the defendant company's answer makes like denials. After these alleged contracts she herself sold, or agreed to sell, the property to the defendant, the Clark company. The bill prayed specific performance and an injunction against carrying out this other contract, and an injunction *pendente lite* was granted. Mrs. Sergeant lived in California, and the contract alleged to have been made by her, as well as the authority given to the agent, appears by letters and telegrams signed and sent by Mrs. Sergeant, so that the case depends largely on the construction of written documents. The first communication is a letter of May 5th, 1905, in which Mrs. Sergeant writes to Schlesinger:

"If you can sell my dock property before the first of June so that it will net me six thousand dollars cash, let it go; there is a mortgage for $6,000 which the purchaser can assume, but I must realize at least $6,000 clear of any expense."

On September 28th, 1905, she again wrote to him, requesting check for the rent, and asking, "Can you not make a sale?" On November 9th, 1905, she acknowledged receipt of letter and check for rent and suggested that, perhaps, Mr. Pitt, the tenant in possession of the dock, might want to buy it, and a year later, on November 27th, 1906, after acknowledging check for rent, says: "I hope you will write me some day in the near future

that you have sold that place." On December 22d, 1905, Mr. Schlesinger wrote that, for reasons given, several people he had seen declined to entertain his proposition to sell, adding, "however, I am negotiating with a party who would consider it at $10,500, and if you care to entertain such a figure should be pleased to hear from you." Mrs. Sergeant replied by telegram, January 4th, 1906, "Will sell for eleven thousand. Sale must be before February first." Mr. Schlesinger on the same day enclosed this dispatch to complainant, Mr. Stengel, in a letter in which he advised the purchase. Complainant returned the telegram in a letter signed by him, of January 10th, 1906, to Schlesinger, in which he said, "I do not care to increase my offer of $10,500. You may submit it again and nothing more. Yours truly." Signed "C. W. Stengel." On January 11th, 1906, the agent telegraphed to Mrs. Sergeant, "My party will give no more than $10,500 and this offer will be withdrawn by 15th, have no hesitancy in urging you to accept before too late; an answer is imperative." To this Mrs. Sergeant replied on the same day, "Will sell for $10,750 net, if sold by the twentieth." On the 15th, the day fixed for the withdrawal of the offer, Schlesinger again telegraphed, "Unable to do better than $10,-500; consulted Mr. Beach who advises acceptance. No further charge except commission, which includes drawing all papers," and Mrs. Sergeant on January 17th, two days after the time first fixed for the withdrawal of the offer, signed and sent the following telegram, which, in connection with the other telegrams and the letters, is relied on as the direct contract with complainant, or, if it be ineffectual for that purpose, then as authorizing the agent to sign a binding contract: "Will pay half of commissions and sell for $10,500. Wire me if accepted." Signed "Mrs. M. E. Sergeant." This telegram was received by the agent on Thursday, January 17th, was shown by him on January 18th to the complainant, who then said he would take the property and would send check. On January 19th the agent took from complainant a payment by check of $250 on account, and signed as agent for Mrs. Sergeant the following memorandum:

"NEWARK, N. J., January 19, 1906.

"Received of Christian W. Stengel the sum of Two Hundred & Fifty (250) Dollars on account of the purchase price of the Dock Property known and designated as Lot 1 Block 2029, and more particularly described in a certain mortgage given by Mary E. Sergeant to the Fidelity Trust Co., recorded &c. * * * which I have agreed to sell and convey for the sum of $10.500, free and clear of any and all encumbrance, $4,250 to be paid upon delivery of a warranty deed, free and clear of any and all encumbrances, on February 1, 1906, at Schlesinger's office in Newark, the remainder of the purchase price namely, $6,000, is to be represented by a certain mortgage now on said premises, &c." (Signed) "L. Schlesinger, agent for Mary E. Sergeant."

Subjoined to the receipt is a form for the purchaser to sign, "I hereby agree to purchase the above property upon the terms and conditions named," but it was not signed by the purchaser, nor has the purchaser signed any memorandum relating to the sale, except his letter to the agent, dated January 10th, authorizing him to submit again his offer of $10,500. It is now claimed that the principal's telegram of the 17th to her agent, communicated to the purchaser, was an acceptance by the principal direct of the purchaser's previous offer by the letter of January 10th and a sufficient memorandum within the statute of frauds. The check for $250 was not paid up to the time of the hearing, nor does it seem to have been presented for payment. On January 19th, 1906, after signing the agreement and receiving the check, Schlesinger telegraphed to Mrs. Sergeant, "Closed at $10,500 upon your terms, by February first. Confirm my action by wire and letter. Will attend to all papers." This telegram was followed by a letter on January 20th (Saturday), in which he enclosed a copy of the telegram of the 19th, and also a deed for Mrs. Sergeant to execute and return. No copy of the receipt or agreement was enclosed, neither did the agent inform Mrs. Sergeant by either this telegram or letter that any agreement had been signed on her behalf, or that any payment on account made. Not hearing from Mrs. Sergeant in reply to this telegram of January 19th, requesting confirmation of his action, Schlesinger, on January 22d (Monday), repeated the telegram of the 19th, adding "Have forwarded deed for execution; please reply, confirming acceptance." Mrs. Sergeant, on January 23d, 1906, telegraphed, "Before answer came received offer $11,000, accepted. Will write." She says that the tele-

gram of the 19th was not received by her until the 23d, on account, according to her explanation, of her absence from her usual abode, and in the interval between the 19th and 22d, by direct telegrams passing between herself and the defendant company, she agreed to sell to the company, and has since executed a deed.

On the whole evidence of Mrs. Sergeant in the case, and especially on careful scrutiny of her own letters and telegrams after January 19th, I am not at all satisfied with her statement that the telegram of January 19th was not received before her first telegram in reply to Mr. Clark, which was sent on January 21st (Sunday), and in which she said, "Will you pay $11,000? Have offer and must accept by Monday; cannot hold over; answer at once." But the substantial question is, whether previous to making the contract with the Clark company, and either by herself or by her authorized agent, she had made a binding contract for sale with complainant. If the first claim of direct contract by Mrs. Sergeant herself be not sustained by competent written evidence, the claim on the contract signed by the agent may be urged by way of alternative claim of relief, and because the claim of direct contract is not sustained. In reference to the letters and telegrams between Mrs. Sergeant and her agent, which are relied on as establishing a completed contract between her and the complainant, the general criticism is made that they are merely communications by way of instructions between a principal and agent, and are not intended to be, and should not be treated as, writings evidencing a contract between the principal and proposed purchaser. The well-considered case of *Potter* v. *Hollister, 45 N. J. Eq. (18 Stew.)* 508, 514 (*Vice-Chancellor Van Fleet, 1889*), declines to give such communications of the principal to his agent the force of evidence in favor of the adverse party, where they are simply intended as a delegation of power or instruction to the agent, and no authority is given to deliver the communications to the other party. This decision has never been questioned, and as to all of the letters and telegrams from the principal up to the one of January 17th, I think it is clear that they must be held to be mere instructions from principal to agent as to terms of sale, and not communi-

cations intended directly for the proposed purchaser, or to be delivered to him, either as evidence of contract or otherwise. There may be some question as to the effect of the telegram of January 17th, 1906. This telegram is in reply to one from the agent of January 15th, which states that he is unable to do better than $10,500, and that Mr. Beach (a business friend) advises acceptance. The telegram of January 17th is, "Will pay half of commissions, and sell for $10,500. Wire me if accepted." The broker being the agent of Mrs. Sergeant only, she was solely responsible for his entire commissions, in case of sale, and, assuming the telegram of the 17th, as to the price ($10,500) to be intended as an acceptance of a previous offer and not the submission for acceptance of a new offer by the vendor, any conclusion that this telegram was not intended merely as authority or instruction for the agent, but was intended to be delivered to the purchaser as a binding acceptance of any previous offer, which did not include any reference to the commission, could not safely be drawn from its terms. If it was to be delivered to the purchaser as evidence of her contract with him, then she was entitled, as part of the purchaser's contract, to an agreement from him accepting this provision as to commissions, as an indemnity against her own liability to the agent, and an acceptance in writing on his part of the conditional offer was necessary. Such acceptance was never made. If, on the other hand, as complainant insists, the condition as to commission be considered as a matter merely between the principal and agent, it would be difficult to conclude that the whole telegram was not intended as a communication merely from the principal to the agent, not intended for delivery to the purchaser as evidence of the contract, and therefore within the ruling of *Potter* v. *Hollister,* and controlled by it. It will not be necessary, however, to dispose of this branch of the case upon this point, as there is a preliminary question, whether this telegram of January 17th, in connection with the other writings signed by Mrs. Sergeant, constituted a sufficient memorandum within the statute of frauds to make a complete contract of sale on her part. The telegram of January 17th did not, on the face of it, refer to or appear to be a reply to any previous letter or telegram, and its

connection with any of them appears only by parol, and it must be further noticed that in none of the letters or telegrams signed by Mrs. Sergeant is the name of the purchaser disclosed, nor is it disclosed in any letter or telegram referred to in those signed by her. The only evidence of the purchaser's identity is the parol evidence of himself and the agent, and the paper signed by the agent subsequent to the supposed contract made by the principal. It is true that the complainant signed the letter of January 10th, 1906, to Schlesinger, directing him to submit offer of $10,500 in reply to Mrs. Sergeant's telegram of January 4th, but this letter of January 10th is not referred to in any of the subsequent letters or telegrams signed by Mrs. Sergeant, and its connection with them cannot, therefore, as against Mrs. Sergeant, and for the purpose of making out a contract as signed by herself, be proved by the parol evidence of Schlesinger and the complainant. *Johnson* v. *Buck, 35 N. J. Law (6 Vr.) 338, 344 (Supreme Court, 1872)*; *Nibert* v. *Baghurst, 47 N. J. Eq. (2 Dick.) 201, 208 (Vice-Chancellor Green, 1890)*. Nor can the name of the vendor or vendee be supplied by parol evidence. *Schenck* v. *Spring Lake, &c., Co., 47 N. J. Eq. (2 Dick.) 44 49 (Vice-Chancellor Van Fleet, 1890)*; *Bowers* v. *Glucksman, 68 N. J. Law (39 Vr.) 146 (Supreme Court, 1902)*. The subsequent receipt by Schlesinger in Mrs. Sergeant's name, referring to Stengel as the purchaser, is not evidence against Mrs. Sergeant on the question whether the telegram of January 17th, in connection with the previous writings, constituted a sufficient written contract of sale, by memoranda signed by Mrs. Sergeant herself. He was not her agent for the purpose of making such subsequent admissions in reference to her own previous contract.

Concluding that Mrs. Sergeant herself signed no contract with complainant for the purchase, the next question is whether the contract of January 19th, 1906, signed by Schlesinger as her agent, was authorized. The authority to make the contract must be derived from the letters and telegrams, and in the construction of these the rule settled in our decisions must be borne in mind, that the employment of a broker to sell lands, *i. e.*, to procure a purchaser, does not of itself, or *prima facie*, confer

authority to bind the owner to sell by a contract in writing, and that such authority is not usually to be inferred from the use by the principal and agent in that connection of the terms "for sale" or "to sell" and the like. These words in that connection usually mean no more than to negotiate a sale by finding a purchaser upon satisfactory terms. *Keim* v. *Lindley, 30 Atl. Rep. 1063, 1073 (Vice-Chancellor Pitney,* 1895); *S. C. on appeal, 54 N. J. Eq. (9 Dick.) 418, 423 (1896).* And any parol evidence relied on to establish the authority of a broker to make a binding contract must be clear and decisive. *Lindley* v. *Keim, 54 N. J. Eq. (9 Dick.) 422; Scull* v. *Brinton, 55 N. J. Eq. (10 Dick.) 489, 490 (Court of Errors and Appeals, 1897).* There are no extraneous circumstances which control or substantially affect the construction of the letters and telegrams in reference to the point now under consideration, viz., whether the authority to the broker was clearly intended to cover authority to make himself a contract of sale, binding on the principal, and treating the letters and telegrams as communications addressed solely to the agent, they contain, in my judgment, no clear authority to make such contract, even on the terms given in the letters. But the contract signed by the agent, in two important particulars, exceeds any authority given by the principal. *First,* it binds her to the delivery of a warranty deed, free of all encumbrances. This was unauthorized, inasmuch as a purchaser, under an agreement to convey, while he is entitled to a clear title, is not entitled to covenants of warranty unless the vendor has so stipulated. *Lounsbery* v. *Locander, 25 N. J. Eq. (10 C. E. Gr.) 554 (Court of Errors and Appeals, 1874).* This simple authority to the broker to sell could not, therefore, authorize an agreement to sell with full covenants of warranty. In the *second* place, the authority was to sell for $10,500; this did not authorize an agreement to sell for $4,500 cash, the balance to be represented by a mortgage on the premises. The owner had the right to require the payment of the purchase-money necessary for the discharge of the mortgage, and by the authority to sell for $10,500 preserved her option to procure her discharge from her bond secured by the mortgage. The agreement as drawn seems to give to the purchaser the option of continuing the mortgage

as part payment of the purchase-money. For these two reasons, arising out of the form of the contract made by the agent on behalf of the principal in which he exceeded his authority, the contract is not binding on the principal, even if authority to execute a contract in her behalf be found to exist. But to my mind the main objection to treating this contract as a contract binding on the principal, and decreeing its specific performance under the equitable power of the court, is that, assuming the power to make the contract, and to make it in the form in which it was made, the agent, in violation of his clear duties toward his principal, made a contract of sale binding only against his principal, and failed to procure a contract binding on the purchaser. The purchaser, having signed no memorandum or contract containing the terms of the contract signed by the agent, was left free to complete the purchase on these terms or not, as he chose, holding the vendor bound by means of the form of contract executed between the purchaser and the agent. None of the agent's letters or telegrams to Mrs. Sergeant advised her of this situation, even when asking to confirm his action. Mutuality in the specific performance of contract is one of the essential equitable rules, and although unilateral contracts are enforced against the party signing, when *intentionally* made in that form by the party signing, the court exercises its discretion as to specific performance of such contracts with great caution, and views somewhat narrowly the conduct of the party claiming the benefit of his unilateral right to make the contract absolute. *Fry Spec. Perf.* § *467; Chesterman* v. *Mann, 9 Hare 206, 212; Van Doren* v. *Robinson, 16 N. J. Eq. (1 C. E. Gr.) 256, 260.* The unilateral contract becomes binding on the party who has not signed, only by the filing of the bill—*Richards* v. *Green, 23 N. J. Eq. (8 C. E. Gr.) 536, 537 (Court of Errors and Appeals, 1872, Chief-Justice Beasley)*—and up to that time he is free from any legal or equitable obligation. And it would not ordinarily be equitable, in my judgment, to enforce against a principal a unilateral contract made in that form by an agent without the principal's knowledge or express authority. Had Mrs. Sergeant been fully advised by her agent that the contract had been signed in this unilateral form, and that the purchaser had

signed no binding contract to purchase on the terms fixed for her by her agent, she would, I think, have had the right to repudiate her agent's action as unauthorized and as a violation of his plain duty to protect her interests and rights on the sale and to complete a "sale." A broker employed to sell or procure a purchaser, does not earn his commissions by procuring persons to sign an option to purchase, and not binding them to purchase. *Runyon* v. *Wilkinson, 57 N. J. Law (28 Vr.) 420, 424 (Court of Errors and Appeals, 1894).* And as the transaction in this case, by the agreement signed by the agent, took a form in which the purchaser did not bind himself, but substantially procured an option to purchase on those terms, which were different from the terms of his written offer, the signing of such an agreement would not be authorized by a mere authority to sell, nor, in my judgment, even by express authority to execute a contract of sale. It would not be a "sale" or a "contract of sale" within the meaning of the principal's authority, for the "sale" must ordinarily be taken to mean a complete sale and to include the agreement of the vendee to purchase as well as the agreement of the vendor to sell. This circumstance, that the purchaser was not bound by the terms of the contract signed by the agent, deprives the purchaser of any equitable right to a specific performance of the unilateral contract, and prevents the holding of Mrs. Sergeant as so bound in equity by the contract made for her by her agent in this form without her knowledge or consent; that up to February 1st, and pending complainant's decision about filing a bill, she could not deal with the property as her own and contract to sell to the defendant company. And this reason for refusing specific performance applies equally to the claim for enforcement of the direct contract alleged to have been made by Mrs. Sergeant herself, for the basis of such enforcement must, under *Potter* v. *Hollister,* be that the telegram of January 17th was intended to be communicated and delivered to the purchaser as evidence of the contract of the vendor. In that view of the telegram, it required an acceptance by the purchaser of the new terms including commissions, as to which the purchaser's previous offer was silent.

I will advise decree dismissing the bill and dissolving the injunction.