## ˙ARCHIBALD K. BROWN, appellant,

*v.*

## JOSEPH M. BROWN et al., respondents.

1. The specific performance of contracts is a mode of redress grounded upon the impracticability or inadequacy of legal remedies to compensate for the damages which the party seeking it will suffer by the default of the other in keeping his bargain.

2. It is only when the remedy at law will not put the party in a situation as beneficial to him as if the agreement were specifically performed that equity will interfere.

3. Where jurisdiction exists, the remedy is not of right; the court holds it in judicial discretion, controlled by principles of equity and justice.

4. The bargain or promise to be enforced, whether written or verbal, must possess, in substance and external form, the requisites of a valid contract.

5. It must have been completely determined between the parties, and its terms definitely ascertained.

6. So long as negotiations are pending over matters regarded by the parties as material to the contract, and until they are settled, and the minds of the contracting parties meet upon them, it is not a contract, although, as to some matters, they may be agreed.

7. Where it was sought to compel the specific performance of a parol agreement to assign in trust, for the benefit of the complainant and five other creditors, the defendant's interest under a will, and it appeared that at the interview during which the alleged parol agreement was entered into, the terms and conditions of the assignment were in a measure, but not entirely, ascertained; it being understood at that time that the assignee was to pay the creditors first, and then reconvey the remainder to the assignor, but as to provision for the defendant's own support out of that interest, and his release and discharge from those creditors' claims no agreement was reached; and afterwards the defendant, using a form drafted for him by the creditors, containing such provision, prepared, signed and sealed an instrument of assignment, and at the instance of one of the creditors omitted therefrom all such provision, but refused to deliver the instrument, on the ground that such provision was first to be made, and the creditors to release and discharge him from their demand—*Held,* that there is no such contract established between the complainants and defendant as a court of equity can and will perform by its decree.

8. In such case there was no delivery of the deed of assignment, and, therefore, the suit cannot be maintained as a proceeding to obtain possession of a deed or muniment of title.

Brown *v.* Brown.

9. What acts or words shall constitute a delivery must depend upon the circumstances of each case.

10. A specific performance will not be decreed unless the existence and terms of the contract be clearly proved. If it be reasonably doubtful whether the contract was finally closed, equity will not interfere.

11. The proposal made by the defendant was, as to all the creditors named, an entirety, and was not capable of severance.

12. The failure of a part of the creditors to agree to a condition embracing all would be a total, not a partial, failure to accept such conditions.

13. A devise of rents arising out of the residue of the testator's real estate, which the executors were authorized and directed to sell, is an interest in lands within the statute of frauds, and its transfer must be evidenced by a note or memorandum signed by the party to be charged therewith.

14. In order to enforce the performance of a contract within the statute of frauds, on the ground of part performance, (1) the parol agreement relied on must be certain and definite in its terms; (2) the acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved; (3) the agreement must have been so far executed that a refusal of full execution would operate as a fraud upon the party, and place him in a situation which does not lie in compensation.

15. The assignment in this case cannot be regarded as the written memorandum required by the statute of frauds, because it was not delivered.

On appeal from chancery.

*Mr. Gillmore* and *Mr. Collins,* for appellant.

*Mr. Weart* and *Mr. Ransom,* for respondents.

KNAPP, J.

The bill of the complainants below, and the several cross-bills, were designed in effect to have the appellant specifically perform a parol agreement to assign in trust, for the benefit of complainant and certain other creditors of appellant, his interest in the estate of his father-in-law, Hosea F. Clark, deceased, given by his will.

In the pleadings filed, and from the proofs taken in the cause, it appears that in the year 1877 the appellant, Brown, was indebted to the complainant, and to William M. Force and others for money which he, acting as their attorney, had collected for

them and failed to pay over. He was without means or re-sources to satisfy these and other debts owing by him, except the provision made for him in the will of his wife's father.

Force and the complainant were pressing him for payment. Force had instituted, in the Supreme Court, proceedings for attachment and to disbar him, and had commenced suit for his claim. The complainant threatened similar measures against him, and each was urging to have the interest in the will assigned to himself. Brown had promised to make the transfer to Force, but did not do so.

About the month of July, 1877, Brown met Force and his attorney at the office of the complainant's solicitor in Jersey City. At that interview he promised to assign the whole or some part of his interest under the will in trust for the ratable benefit of the complainants, Force, Henry S. Little, Benjamin F. Lee, John S. Beegle, George F. Brown and Joseph M. Brown, of whom were his creditors, and the terms and conditions the proposed assignment were in a measure, but not entire ascertained. It was understood that what should be assigned must be for the common interest of all the creditors named, and that when they were entirely paid, the remainder should be given back to the assign. What sum of share, if any, Brown should retain for his own support, or what disposition the creditors were to make of their claims, or what changed attitude towards Brown was to be assumed by them in consideration of the assignment, the parties seem not to be agreed about.

Mr. Ransom drafted a form from which Brown was to prepare an instrument of transfer. This he, Brown, did, omitting at the request of Force, or his attorney, all provision for himself, named John Olendorf, Jr., as trustee, authorized him to collect from the executor of Clark all moneys due or to grow due to him from the estate, and directed payment, as the money should be received, to be made *pro rata* among the creditors named until they were paid their several demands, and the balance to reconvey to him. The deed so drawn was signed and sealed by Brown in the presence of a subscribing witness, but the custody of the paper remained with the appellant. He re-

fused to hand it over to the assignee or to the creditors who applied for it, upon the alleged ground that some provision was first to be made for some portion of interest under the will for his own support, and that the creditors so to be provided for were to discharge him from their demands and engage to no further prosecute them against him. Those creditors who were active in pressing their demands against him disagreed to his retaining any share of the Clark estate for his maintenance, and one of them, Mr. Force, pressed the suit already commenced against him to final judgment, execution and supplemental proceedings to get possession of his share under the will, and in October, 1877, filed his bill in equity for the appointment of a receiver. Upon the case as made, the leading features of which are thus summarized, the advisory master found that there was an agreement made by Brown on sufficient consideration to assign the interest given him in the will upon the precise terms expressed in the writing signed and sealed by him. And that, although the deed of assignment was not technically delivered to Olendorf, yet the beneficiaries under it had a 'right to have it delivered and specifically performed; that Force was entitled to participate in the subject of the assignment, and he advised a decree accordingly. Such decree was entered, and the appeal is taken from the decree.

Before proceeding to those questions which I regard as controlling the cause, it is proper to notice a point urged by counsel of appellees with much earnestness, viz., that the deed of assignment was delivered, or should be so regarded in a court of equity. Until a deed is delivered it has no force or validity. What acts or words shall constitute a delivery must depend upon the circumstances of each case. Words or acts which evince an intent to deliver, such intent having reference to the present time, are sufficient. *Folly* v. *Vantuyl, 4 Hal. 153.*

The possession by the grantee of a deed formally executed is presumptive evidence of delivery. The admissions of the grantor of a delivery are, like other admissions against himself, competent evidence upon the subject. But it is a fact to be proved, like any other, by competent testimony; and whether the

issue be in a court of law or in equity, it is one to be established by proof, and we are not aware of any rule of evidence under which the character or measure of proof of a fact differs in the different jurisdictions. Certainly, neither in law or equity, has the court power to take up a contract unfinished between the parties, and complete it for them by its judgment or decree. Courts do not make contracts for parties. We agree entirely with the advisory master that no delivery was proved. When the instrument was sealed, the grantor expressly declared his intention to retain it for further consideration. If there was a delivery, the title to the fund would have passed to the assignee, and it would then be difficult to find standing-ground for the appellees; this suit would be a purposeless proceeding. If there was no delivery, the suit cannot be maintained as a proceeding to obtain possession of a deed or muniment of title. Title in the plaintiff to the document sought to be recovered is essential in such a suit.

The decree, although in form directing the delivery of the specific paper drawn and signed by appellant, is, in substance, as we interpret it, one for the specific performance of the parol agreement to assign the appellant's share under the will, by executing an assignment according to the terms of the agreement as found by the court.

The question, then, raised by the appeal is, whether the complainants below have established such a contract between the appellant and themselves as a court of equity can and will perform by its decree.

There are certain general rules governing the court in the specific execution of contracts between parties that are established. It is a mode of redress, grounded upon the impracticability or inadequacy of legal remedies to compensate for the damages which the party seeking it will suffer, by the default of the other in keeping his bargain. Where the law gives an action for the non-performance of the contract, and damages can be admeasured to fully match the wrong inflicted, courts of equity will not, unless other grounds of equitable relief be involved, accord this remedy. It is only when the remedy at law will not put the

party in a situation as beneficial to him as if the agreement were specifically performed. *Pom. on Sp. Perf.* § *9,* and notes; *Cutting* v. *Dana, 10 C. E. Gr. 271.*

Where jurisdiction exists, the remedy is not of right; the court holds it in judicial discretion, controlled by principles of equity and justice. " The question is not what the court must• do, but what it may do under the circumstances." *Radcliff* v. *Warrington, 12 Ves. 332.*

The bargain or promise to be enforced, whether it exist in the form of writing or be merely verbal, must possess, in substance and external form, the qualities and requisites of a valid contract. The bargain must have been completely determined between the parties, and its terms definitely ascertained. So long as negotiations are pending over matters relating to the contract, and which the parties regard as material to it, and until they are settled and their minds meet upon them, it is not a contract, although as to some matters they may be agreed.

An important question in the cause is, whether these parties ever reached the point where it could be said they were agreed upon all the essential terms of the contract to assign the gift in the will. If the parties and witnesses who testified in the case are credible men, and there is no intimation from any quarter that they are not all of them entirely so, it would seem impossible, out of the conflict of views entertained and statements made by them, to reach any other conclusion than that they were, during their negotiations, and since then have remained, at irreconcilable variance in respect to important particulars touching the subject of their treaty.

Brown, by his responsive answer to the bill, and in his testimony, persistently and forcibly asserts that he never agreed to assign his interest except upon the condition that some certain portion of the fund to be conveyed should be secured to him for his support, and that he refused to make the transfer, awaiting the concurrence of those creditors with whom he was in direct negotiation in that demand. That this was truly his position has not only his oath but his full support in concurrent circumstances. The draft of the assignment made by Mr. Ransom was

so framed as to make some provision for him. That he was in controversy with Mr. Force and his counsel touching this subject, they objecting to such allowance, is not disputed. His being destitute of other means of support, and without employment, give ground for believing that he did not consent to give up his entire means of support, or agree to depend upon a verbal promise of an uncertain charity, and it is equally certain that they did not agree with his purpose to retain a part. The parties were then unsettled as to the subject matter of the contract.

They seem to have been equally unfortunate in determining what surrender or sacrifice the creditors should make in view of an assignment being made for their benefit.

The appellant insists that for it he was to have, in lieu of what he gave, release from the debts as such, or an equivalent protection against their further prosecution. He says in his answer that the agreement was that the claims of the complainant and Force and the other creditors named, "should be released and this defendant discharged from the same."

Attempt had been made by Force to attach him for contempt, and to disbar him, and proceedings of like character were threatened by others. It was, therefore, an important consideration with him that the claims of all these creditors should be changed into the proposed new security, or that some other legal assurance against their further prosecution should be given. For this he was surrendering almost the whole of the fund, and it was his only property. It is thought that there can be small doubt that such was his understanding and expectation throughout the entire effort of the parties at making an agreement.

That the creditors did not come to an understanding on this point, so important to the appellant, admits of as little question.

The acts of some, and the testimony and declarations of all on the creditors' side, make this abundantly manifest. They had not consented to release their debts, but clearly intended to assume and maintain towards their debtor an attitude more advantageous to themselves than they could have had if the assignment had been made under the act governing assignments for the benefit of creditors. The most that they were willing to

Brown *v.* Brown.

agree to was that they would forbear to prosecute their claims (for how long does not appear) if and when appellant conveyed the fund. This is apparent from the complainant's bill, the cross-bill of Force, and the testimony of Ransom, Weart and Force.

There is little to show that the appellant was not standing out for these terms, save that he was undemonstrative in urging them. The acting creditors assumed, quite naturally, perhaps, to dictate the terms in the respects mentioned rather than treating them as matters to be settled by convention of the parties, and as a result their minds failed to meet on essential terms of the agreement.

A specific performance will not be decreed unless the existence and terms of the contract be clearly proved. It must be shown that a contract has been concluded. If it be reasonably doubtful whether the contract was finally closed, equity will not interfere by decreeing a specific performance. *Ridgway* v. *Wharton, 6 H. L. Cas. 238 ; Brewer* v. *Wilson, 2 C. E. Gr. 182 ; Potts* v. *Whitehead, 5 C. E. Gr. 85.* Nor will it interfere when the evidence leaves the agreement as to any of its terms in uncertainty. *Clow* v. *Taylor, 12 C. E. Gr. 418 ; Cooper* v. *Carlisle, 2 C. E. Gr. 530.*

To give the relief accorded by the decree, it is necessary not only to deny to the appellant the consideration which he relied upon and claimed for his promise, but also that which the appellees conceded as such consideration.

The proposal made by appellant was, as to all the creditors named, an entirety, and was not capable of severance. It was not an offer made severally to each, but the clear purpose was to embrace all, and its entire object, so far as the appellant was concerned, failed of accomplishment if any omitted or refused to accept it. An acceptance could only be by those and all of them to whom the offer was made upon the strict terms of such offer.

There was no release, merger or abatement made of any part of their claims. They were to remain the same after as before the assignment, except as they might be reduced by payment out of the fund after it should be transferred. All that remains,

42

then, in the form of consideration, is the unsecured promise not to sue, by a portion of the creditors. But this was not the consideration stipulated for in the appellant's offer, viewed from the standpoint of the appellees. The promise not to prosecute further, which can be regarded as the condition of the offer, was the promise of all. It does not appear that more than two of the creditors accepted or agreed for any delay, and one of the two seems to have conducted his suit to judgment, soon followed by execution, petition instituting supplemental proceedings, and, subsequently, on the 15th of October following, he filed his bill in chancery for the appointment, in his interest solely, of a receiver of this fund.

The acceptance and consent of a part of the creditors in no degree meets the stipulated condition. The failure of a part of them to agree to a condition embracing all, would be a total, not a partial, failure to accept such condition.

In the appellees' view, then, the case is this : appellant agrees to assign a fund in trust for the ratable benefit of six creditors for the consideration that such creditors shall all agree not further to prosecute their respective claims ; that two of them having so promised to delay, the contract is complete, the consideration rendered, and performance must be decreed.

The appellant was entitled to the consideration which he stipulated for ; that failing, the bargain was off, however advantageous it might have been to appellees, had it been executed.

But there is a further difficulty in the way of this decree, growing out of the operation of the statute of frauds upon a parol agreement concerning the subject matter of this negotiation. The interest of the appellant, which was treated of with a view to its transfer, arises under the following clause in the will of Hosea F. Clark, deceased. " Item. The rents arising from my houses and lands and real estate, which I have directed to be sold, from the time of my decease to the time of such sale and conveyance, after paying thereon all taxes, assessments and repairs and interest on mortgage encumbrances, if any, as the same may be chargeable from time to time, I instruct and direct my executrix and executors, the survivors and survivor of them,

to pay over in quarterly installments in the following propor-
tions as bequests, which I give to the following persons, viz., to
my son-in-law, Archibald K. Brown, an equal one-sixth part
thereof." The rents thus given are those arising out of the
residue of his houses, lands and real estate remaining after cer-
tain specific devises in the will, which residuary real estate the
executors were authorized and directed in their discretion to sell.

To the parol contract set up in the bill the appellant has
pleaded the statute of frauds, and presents the question whether
the interest which he receives by the recital clause in the will is
within the meaning of the provision requiring contracts for the
sale of lands, tenements or hereditaments, or any interest in or
concerning the same, to be in writing.

A rent is an incorporeal hereditament. *2 Bl. Com.* It is a
certain profit issuing yearly out of lands and tenements. Lord
Redesdale, in *O'Connor* v. *Spaight, 1 Sch. & Lef. 306,* held that
an agreement between a landlord and his tenant for an abate-
ment of the rent was within the statute. In Robertson Frauds,
page 126, it is said that without the words "any interest in or
concerning lands," the word "tenements" would have included
rents under the interpretation given by Lord Coke to that word
in the statute *de donis.* In Brown's treatise on the same subject,
p. 230, the author summarily disposes of the question by saying,
"of course the statute includes rents, commons and all incorporeal
hereditaments."

If, then, rents are included within the meaning of the statute,
is the clause in question a devise of rents? By its terms it
would seem to be clearly so. What he gives is the *rents* arising
from his houses and lands and real estate. The executors are
authorized to collect the rents, not, however, to make a fund in
their hands, but to retain and pay the taxes and other charges
upon the lands and to pass over the remainder or net rent to the
appellant and other parties named as owners.

If the foregoing views on this part of the case are correct, the
alleged agreement being for the sale and transfer of a subject
within the statute of frauds, and not being evidenced by any
note or memorandum, signed by the party charged or his agent,

it is unavailing either at law or in equity, and is incapable of specific performance, unless it can be brought within that class of contracts the non-performance of which are held, by reason of peculiar circumstances, to work a fraud upon him who seeks their execution. The most numerous species of the class are those not enforceable at law, by reason of the statute of frauds, but which have been part performed by the party seeking to enforce them.

The doctrine of equity that part performance of a parol agreement takes it out of the statute of frauds, rests on the idea that to plead the statute in the particular instance would work a fraud.

There must be acts in part performance of such a nature that the plaintiff cannot be placed in his original position or adequately compensated by damages. *Pom. on Sp. Perf.* § *106; Gilbert* v. *Trustees &c., 1 Beas. 204.*

In parol agreements for the sale of lands, payment of the contract price by the purchaser is not of itself sufficient part performance to take the case out of the statute, for the reason that money can be recovered back, with interest, by way of damages for its detention. *Clinan* v. *Cook, 1 Sch. & Lef. 41; Hughes* v. *Morris, 1 De G., M. & G. 355; Glass* v. *Hurlburt, 102 Mass. 28; Cole* v. *Potts, 2 Stock. 67; Green* v. *Richards, 8 C. E. Gr. 32; Cutting* v. *Dana, 10 C. E. Gr. 271.*

A brief and comprehensive statement of the conditions under which courts of equity enforce such contracts is found in *Wright* v. *Puchett, 22 Gratt. 374.* " 1. The parol agreement relied on must be certain and definite in its terms. 2. The acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved. 3. The agreement must have been so far executed that a refusal of full execution would operate as a fraud upon the party, and place him in a situation which does not lie in compensation. When these three things concur, a court of equity may decree specific execution. When they do not, it will turn the party over to seek compensation in damages in a court of law."

There were no written memoranda signed by the appellants here. The assignment cannot be regarded as such, for the obvi-

Brown v. Brown.

ous reason that it was never delivered for that or any other purpose. *Brown on Frauds* § *354*, and cases cited in note 3.

The admission of a parol agreement in the answer is not of the agreement claimed by the complainant, and if it were, his setting up the statute of frauds in bar precludes a decree upon the agreement so admitted. *Van Dyne* v. *Vreeland, 3 Stock. 370.*

Regarding the pleadings as presenting a case rested on the ground of part performance, it is obvious that, under established rules, proof of such performance is absent.

The appellees, or most of them, it is true, forbore to prosecute their claims. Besides this they did nothing, gave nothing, suffered nothing. Their claims remained as before. It does not appear that Brown has less ability now to pay than then. He had nothing then outside of the legacy, and any change of condition must be an improvement. For their delay in prosecution they had adequate damages at law in interest for their forbearance.

For the foregoing reasons the decree should be reversed.

*Decree unanimously reversed.*