Milne *v.* Kleb.

---

### ALEXANDER MILNE

*v.*

### PETER KLEB.

1. An agent may be authorized by parol to enter into a written contract for his principal to convey land.

2. But a simple parol authority to sell, without more, will not authorize the agent to sign a written contract for his principal.

3. A special agent, appointed to do a specific act, cannot bind his principal unless he pursues his authority strictly, and those who deal with him are chargeable with notice of the extent of his authority.

4. A purchaser, buying of an agent, must, at his peril, ascertain the extent of the agent's power.

On final hearing on bill and answer and proofs taken orally.

*Mr. George M. Titus* and *Mr. Theodore Runyon* for complainant.

*Mr. Frederick W. Stevens,* for defendant.

VAN FLEET, V. C.

This is a suit for the specific performance of a contract to convey lands. The complainant asks that the defendant be compelled to convey certain lands to him, situate in the city of Newark. The contract on which his action is founded was not made by the defendant in person, but by a person representing himself to be the defendant's agent. The defendant denies that this person was his agent. Whether the court can give the complainant what he asks or not, will depend entirely upon whether the proofs show such a delegation of power to the person who assumed to act as agent, as gave him authority to make a written contract which imposed upon the defendant the obligation to convey. The delegation of power was made by parol. No other is shown. This is sufficient. Mr. Justice Van Syckel, in *Long* v. *Hartwell, 5 Vr. 116, 121,* said, in substance, the cases, both in England and this country, agree that authority to an agent to make a contract in writing to convey land need not be in writing, but may be created by parol.

The person assuming to act as agent in this case entered into a written contract with the complainant. The contract is unilateral. It imposes no obligation whatever upon the complainant. Although made by a person assuming to act as the defendant's agent, and without previous consultation with the defendant about the contract, he seems to have proceeded upon the notion that he would faithfully discharge his duty to his principal by

binding his principal to convey, without requiring the purchaser to assume a corresponding obligation, or any obligation whatever. The only power ever conferred upon this person by the defendant, in respect to the lands in question, was conferred in November, 1885. The power was not exercised until December 15th, 1887, more than two years after it was created. The contract, on which the complainant's action is founded, bears date December 15th, 1887. The defendant sailed for Europe on the 21st of April, 1886, and remained there until after this suit was brought. The person who assumed to act as the defendant's agent, in making the contract in question, is an attorney-at-law, and had, prior to the defendant's going to Europe, transacted some professional business for the defendant. A week before the defendant sailed for Europe, he executed a power of attorney in the presence of this person, which had been drawn under the direction of this person, by which he appointed his friend, Edward Goeller, his attorney to collect the rents of the premises in question, and to exercise general control and supervision over them, and to prevent the commission of any trespass upon them, or waste or injury to them. After the defendant left for Europe, no communication of any kind passed between the defendant and this person until after the contract with the complainant was made. Immediately after making the contract in question, this person notified the defendant of the sale, both by telegram and letter. But before the receipt of his telegram, the defendant received another telegram, from Mr. Goeller, announcing the same fact. The defendant notified Mr. Goeller at once, by telegraph, that he would, under no circumstances, sell his property, and stated that, he (Goeller) was his agent. This telegram was shown, on its receipt, to the person who had made the contract with the complainant, as the defendant's agent.

It is not disputed that the defendant, at one time, authorized the person, who assumed to act as his agent in this transaction, to find a purchaser for him, and that the defendant stated to him the terms upon which he would sell his property. The proof of delegation of power, on the part of the complainant, comes alone from the mouth of the person who claims to have been the donee

of the power.   He swears that the defendant, in November, 1885, said to him :

" ' You must try and sell my property for me; I will sell it for $40,000 ; I will allow $25,000 to remain on bond and mortgage, and require only $15,000 cash.'   Then I asked him how long that could remain, and he said ·five or ten years, or any length of time; I do not want the money.   He said they might have it at five per cent.—it might remain at five per cent., and that he would give a clear title."

He also testified, that although the defendant afterwards asked him many times whether he had found a purchaser, he never subsequently restated or repeated the terms on which he would sell.   On the 12th of January, 1886, the agent, in order to make his right to commissions sure, in case he effected a sale, procured the defendant to sign a contract in these words :

" I agree to pay C. Bried two and a half per cent. on the price of my house on Broad street, if he sell or is instrumental in selling the same for me at a price I accept."

The defendant admits that he gave his property to this person to sell, in November, 1885, as he did to several other persons, and that he told him he would sell for $40,000—$15,000 cash and $25,000 on bond, secured by a first mortgage on the property, with interest at five per cent.—but he swears that nothing was said about the time for which the mortgage was to run, nor about the kind of a title which he would make.

But, suppose it be admitted that the defendant gave the agent just the authority which the agent says he did, the question, which this state of facts would present for decision, would be, had the agent authority to bind the defendant by a written contract?   He was a special agent, constituted to do a specific act— to negotiate a sale, or to find a purchaser who was willing to purchase on the terms specified.   The rule with regard to such agents is settled.   Their acts do not bind their principals unless they pursue their authority strictly, and those who deal with them are chargeable with notice of the extent of their authority. *Cooley* v. *Perrine, 12 Vr. 322 ; S. C. on error, 13 Vr. 623.*   The

rule is general, that a purchaser, buying of an agent, must, at
his peril, satisfy himself as to the extent of the agent's authority.
He may also refuse to buy until the agent produces such evi-
dence of authority as to leave no doubt of its extent.    In this
case no claim is made that express authority had been given to the
agent to make or sign a written contract for his principal.    There
is nothing in the circumstances of the case from which such
authority could be fairly or reasonably implied ; on the contrary,
it seems quite clear that the implication should be the other way.
The property was in the hands of other real estate agents ; the
principal and his agent resided near each other and met almost
daily, so that if a purchaser was found, he could easily; and with-
out delay, be brought in contact with the principal ; so far as
appears, at the time the agent was appointed, the principal had
no intention of going to Europe, and the language of the con-
tract of January 12th, 1886, respecting commissions, would
seem to indicate, quite clearly, that it was understood that no
bargain should be concluded by the agent until the principal had
had an opportunity to say whether the price offered was satisfac-
tory or not, its provision in that regard being, that the principal
would pay commissions on the price obtained, provided the agent
sold, or was instrumental in selling, for a price which the prin-
cipal accepted.    Authority to make or sign a written contract is
not conferred, where the thing to be sold is land, by giving an
agent power, by parol, to sell.    Chancellor Zabriskie, in *Morris* v.
*Ruddy, 5 C. E. Gr. 236, 238,* said, following the rule adopted by
the courts of New York, that " giving authority to sell does not,
by force of the terms, or by their general acception, give au-
thority to sign the vendor's name to a contract.    And in the case
of lands it is not wise to extend their meaning by construction."
Mr. Justice Brown had previously, in *Shepherd* ads. *Hedden, 5
Dutch. 334, 345,* said substantially the same thing.    Both of
these cases are cited, with apparent approval, by Mr. Justice
Magie in pronouncing the opinion of the court of errors and
appeals in *Young* v. *Hughes, 5 Stew. Eq. 372, 383.*    In view
of these judicial utterances, I think, this court is bound to re-
gard the rule above stated as established.

The same doctrine has been recognized in England. In *Hamer* v. *Sharp, L. R. (19 Eq.) 108,* Vice-Chancellor Hall said it was his opinion, that when instructions were given to an agent to find a purchaser of landed property, he, not being instructed as to the conditions to be inserted in the contract as to title, was not authorized to sign a written contract on the part of the vendor. In the case under consideration, it is proper to remark, that no instructions of any kind were given to the agent as to what should be inserted in the written contract. Indeed, so far as appears, a written contract was not thought of by either principal or agent. They were looking for a purchaser, and until he was found—until they had some one to make a written contract with—they were not likely to give any attention to the question as to what a written contract should contain, nor whether the vendor should sign it in person, or by an agent. In all probability neither ever gave a thought to the question as to who should sign a written contract, if one was made.

But a further defence exists, namely, that the authority of the agent was revoked prior to the making of the contract upon which the complainant's action rests. The defendant swears, that on the 14th of April, 1886, when he executed the power of attorney to Goeller, he told his agent he would not sell his property. The agent, however, on the contrary swears, that nothing at that time was said about the sale of the property. The circumstances attending the preparation and execution of the power of attorney render it highly probable that something was said. The defendant was about to leave the country; his object in executing the power of attorney was to place this particular property in charge of an agent to do for him, in respect to it, what his absence from the country would prevent him from doing for himself; among the powers which he gave his attorney, was one authorizing him to exercise general control and supervision over the property; the direction to insert this power would almost necessarily, as it seems to me, have provoked the draftsman of the power of attorney—who it will be remembered was the agent—to inquire of the defendant whether he intended to give Mr. Goeller authority to sell the property, or

to decide at what price it should be sold. Unless it was understood that the property was not for sale, it would seem to be almost incredible, in view of the provisions of the power of attorney, and the terms of the contract of January 12th, 1886, respecting commissions, that something should not have been said, either when instructions were given for the draft of the power of attorney, or when it was executed, respecting the power which Mr. Goeller should exercise over a sale of the property. If when the defendant executed the power of attorney, an intention to sell the property still existed in his mind, there can be little doubt, I think, that some authority in respect to its sale would have been conferred by the power of attorney upon Mr. Goeller. I think the defendant's statement, that he told his agent, when he executed the power of attorney, that his property was not for sale, is also strongly corroborated by the subsequent conduct of the parties. Although more than eighteen months elapsed between the time when the defendant left for Europe and the time when the sale to the complainant was made, it is admitted, that during this long interval no communication of any kind passed between the defendant and the person now claiming to have been his agent for all this period. It is highly improbable that, if either had believed that the authority conferred in November, 1885, was still in force, absolute silence, for all this long time, would have prevailed. Silence was entirely consistent with the non-existence of authority, but not with its existence. Moreover, where power to sell land is given by parol it is usually given to serve a temporary purpose, with an expectation on the part of the donor that it will be speedily exercised, and it would, therefore, seem entirely reasonable, that the rule prescribed by the statute of frauds, concerning parol contracts not to be performed within a year from the time they are made, should, by analogy, be adopted as the rule limiting the duration of such powers. Especially should this be so, where it appears that neither party to the power had, for more than a year after it was granted, done anything which would indicate to the other that he regarded it as still subsisting.

The fact that the power was abrogated before the contract in

question was made, is also established by other evidence. The defendant's attorney, Mr. Goeller, went to Europe in July, 1886, and returned in September following. He saw the defendant while in Europe. Shortly after his return, he swears that he had a conversation with the person claiming to have been the defendant's agent in this transaction, in which he told that person that the defendant had told him he would not sell his property. The same fact is proved to have been communicated to this person, about the same time, by another witness. Two witnesses also swear that they communicated the same fact to the complainant prior to the time when the contract in question was made. The complainant denies that any such communication was made to him, but the weight of the evidence is against him. It is obvious that he is in no position to ask for a decree of specific performance. Relief of this extraordinary nature is never granted, except in cases where it appears clearly that the complainant has a fair and honest right to a specific performance of the contract, and where it also appears that the remedy by specific performance will do as adequate, if not more complete justice, than any other.

The complainant's bill must be dismissed, with costs.