EDWARD M. SHAUINGER and LILLIAN F. SHAUINGER,
complainants-respondents,

*v.*

OLGA APTER and BARNEY APTER, executors of Philip Apter,
deceased, et al., defendants-appellants.

[Argued March 6th, 1924.    Decided May 19th, 1924.]

1. The authority of a real estate broker into whose hands an owner places real estate to be "listed for rent," is merely to find a tenant who is ready, able and willing to enter into a lease on the terms specified by, and acceptable to, the principal, and in the absence of special authorization to complete the contract of letting, he has no authority to enter into a lease binding upon the owner.

2. An inference that a real estate broker has been endowed by his principal with authority to bind him in a written lease cannot be drawn from circumstances entirely consistent with his employment as a mere broker, nor without other circumstances clearly indicating the grant of such greater authority.

3. If a real estate broker acts in excess of the authority which has been conferred upon him either expressly or by implication, the principal is not bound except in case of ratification or estoppel.

4. Where a real estate broker, with authority merely to negotiate a lease, accepts a deposit on account of rent of real estate and sends same to the owner, together with the draft of a proposed lease, for a longer term than he was authorized to negotiate for, the owner is not bound by the transaction where it appears that such proposition was immediately rejected by the owner in a letter to the broker pointing out the owner's terms, and when it further appears that the owner, after waiting for a reasonable time without hearing from the broker, sold the property, and so notified the proposed tenant, offering him his deposit, which he refused, and that such owner thereupon returned the deposit to the broker, notifying him that the property was sold.

5. The duty of the court of errors and appeals is to inquire whether there is any error in the judgment or order or decree appealed from and not whether the reasons given for the conclusion reached are tenable.    It is, however, the province of the court to avail itself of the light which may be furnished by the reasoning of the court below. And for that purpose, on an appeal from a decree of the court of chancery, the court will examine the opinion of the court below, filed pursuant to the requirement of our state constitution (article 6,

section 2, paragraph 5), that "when an appeal from an order or decree shall be heard, the chancellor shall inform the court, in writing, of the reasons for his order or decree," and such opinion will be examined even though it was filed after the appeal was taken.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Lewis, whose opinion is reported in *95 N. J. Eq.* 70.

*Mr. Jay Leo Rothschild (Messrs. Rothschild & Rothschild* on the brief), for the appellants.

*Messrs. Autenreith & Gannon,* for the respondents.

The opinion of the court was delivered by

TRENCHARD, J.

The complainants filed this bill to foreclose a purchase-money mortgage dated May 18th, 1920, upon property in Bradley Beach, given by Philip Apter (in his lifetime), and now represented by the defendants.

The bill alleged a breach of the terms of the mortgage by default in interest and installments of principal. The defendants' answer admits the non-payment of principal and interest, but denies that the non-payment thereof was equivalent to a default, and alleged by way of justification for such non-payment a counter-claim in which defendants claim the sum of $800 damages.

The entire controversy at the trial was concerning the validity of the counter-claim.

The vice-chancellor, in his decree, dismissed the counter-claim and ordered foreclosure and the sale of the mortgaged premises, and we think rightly.

It appears that the property in question was sold by the complainants to Apter at the time of the making of the mortgage. The counter-claim of the defendants was based upon an alleged breach of the covenant for quiet enjoyment contained in the deed to Apter, the allegation being that prior

to the making of the deed the complainants had leased the property for the summer season of 1920 to one Garfinkle, and that Apter, in consequence thereof, was unable to obtain possession of the property until the end of the season. At the trial it was not denied that Garfinkle occupied the premises during the summer of 1920. He appears to have entered them by force June 5th, 1920. He claimed to have been entitled to do so by virtue of a receipt for a deposit of $100 on account of rental of the premises given to him by a real estate agent in Bradley Beach named Borden, who admitted that he acted for the owners merely "as a real estate broker," with authority to "procure a party ready and willing to lease the property." Mrs. Shauinger (one of the owners, and who acted for the other) denied that she authorized Borden to make a lease of the property, and apparently none of the parties to the present proceeding ever received or attempted to get any rent from Garfinkle. Mrs. Shauinger testified that she merely placed the property in Borden's hands to be "listed for rent" for the three summer months, specifying the amount of rental she expected to get—in other words, that his employment was merely to negotiate a lease. In that she is corroborated by the documentary evidence. The distinction between a mere broker and an agent with power to contract is clear, and was pointed out in *Lindley* v. *Keim, 54 N. J. Eq. 418.*

The authority of a real estate broker into whose hands an owner places real estate to be "listed for rent" is merely to find a tenant who is ready, able and willing to enter into a lease on the terms specified by, and acceptable to, the principal, and in the absence of special authorization to complete the contract of letting, he has no authority to enter into a lease binding upon the owner. See *Lindley* v. *Keim, supra; Scull* v. *Brinton, 55 N. J. Eq. 489; Stengel* v. *Sergeant, 74 N. J. Eq. 20.*

In the present case, as we have pointed out, there was no special authorization to make a lease.

But the defendants further contend that such authority is to be inferred from the circumstances of the case. We

think not. It seems clear that the times of payment of rent had not been stated by the owners. The receipt which the broker gave, and which it is contended amounted to a lease, purported to fix the payments in installments at stated periods. Moreover, it purported to fix the term for five months, whilst the employment was to find a tenant for the three summer months, although the broker was told in effect that a lease for a longer term would be considered. Furthermore, the making of this receipt by the broker was immediately followed by his sending to the owners a five-months' lease to sign, but which the owners refused to sign. These circumstances were consistent with, and indicated no greater authority than, that of a mere broker. An inference that a real estate broker has been endowed by his principal with authority to bind him in a written lease cannot be drawn from circumstances entirely consistent with his employment as a mere broker, nor without other circumstances clearly indicating the grant of such greater authority. See *Lindley v. Keim, supra.*

If (as here) a real estate broker acts in excess of the authority which has been conferred upon him either expressly or by implication, the principal is not bound except in case of ratification or of estoppel. *Planer v. Equitable Life Association (N. J.), 37 Atl. Rep. 668.*

The defendants make no claim of estoppel. They, however, do contend that even if the broker had no authority to bind the owners, the latter ratified his act.

We think not. It appears that the negotiations between the broker and the owners were opened by the broker writing to the owners, asking if their house was for rent, and in response to his inquiry he received a letter, stating the amount of rent expected for each of three properties owned in Bradley Beach for the coming season, one of which was the property in question, and further advising him that the owners desired to sell at least one of them as soon as possible. This letter also stated, in effect, that if any of the properties could be rented for "more money" for a longer term than

the season, that would be considered. On January 24th, 1920, the broker gave the receipt for a deposit on account of rental of the property in question, designating the term to be five months, and thereupon forwarded to the owners such deposit with a draft of a proposed lease for five months for the owners to sign. This was rejected by the owners in a letter, informing the broker that the owners' terms were for three months only, and of their purpose to sell rather than to lease on the terms proposed. Later, although they held the check and the draft of the lease, the owners wrote the broker several times to the same effect, and not hearing from him, they, as we think, within a reasonable time, notified Garfinkle that the property was sold, offered him his deposit, which he refused, and thereupon returned the deposit to the broker, advising him that the property was sold and was not for rent. In our judgment such circumstances do not show a ratification of the action of the broker, and the owners are not bound thereby.

The only other contention requiring mention is that "the opinion of the vice-chancellor is a nullity; there was no decree upon the merits."

We think there is no substantial ground whatsoever for this contention. It seems to be based solely upon the fact (1) that the decree contains a recital that Apter had elected his remedy on the counter-claim by bringing suit thereon in New York, and (2) the fact that the vice-chancellor's opinion was filed after this appeal had been taken.

As we have pointed out, the decree dismissed the counter-claim after a full and fair hearing on the merits thereof. Our state constitution (article 6, section 2, paragraph 5) declares that "when an appeal from an order or decree shall be heard, the chancellor shall inform the court, in writing, of the reasons for his order or decree." In compliance with the duty thereby imposed, the vice-chancellor, after the appeal was taken from the decree advised by him, filed an opinion, which was laid before the court, setting forth the reasons for the decree, which were substantially those expressed in this opinion as justifying such decree.

On appeal the duty of this court is to inquire whether there is any error in the judgment or order or decree appealed from, and not whether the reasons given for the conclusion reached are tenable. It is, however, the province of this court to avail itself of the light which may be furnished by the reasoning of the court below. And for that purpose, on an appeal from a decree of the court of chancery, the court will examine the opinion of the court below filed in pursuance of the constitutional requirement, even though it was filed after the appeal was taken.

In the view we take of the case, the recital respecting Apter's election of remedy has no proper place in the decree, and it will be eliminated therefrom. With such modification the decree will be affirmed, with costs.

*For affirmance*—None.

*For reversal*—None.

