On bill for specific performance of a lease and to enjoin interference by the lessor of the lessees' enjoyment of the land. *Page 703 
On April 6th, 1926, the complainants and the defendant conferred about the renting by the former of certain of the latter's premises, and, as a result of their negotiations, the following receipt was prepared and signed by the defendant:
"April 6th, 1926.
Received of American Upholstery and Slip Co. twenty 00/100 dollars for rent or as a deposit for rent of factory 40 Milton ave. — not private office; lease to be made for two years at $125 per month with the privilege to renew for two more years at $125 rental. From May 1st, 1926, to May 1st, 1928.
CHARLES IHLE."
In the proofs submitted on the return of the order to show cause a great deal of extraneous matter was included, and, in fact, my mind became so confused that I have been obliged to read the bill and affidavits to secure a clear view of the situation. There is no question in my mind but that the defendant agreed to demise the premises mentioned in the receipt to the complainant for a period of two years, with an option to renew for a like term. It also appears very probable that the change of mind has been occasioned by an ability to lease the premises to another for a larger rent. The difficulty with which I am faced, however, is the failure to complete the terms of the contract. Without reference to the statute of frauds and perjuries, it is the invariable rule that specific performance will not be decreed unless the contract is complete, certain and definite. Pom. Eq.Jur (4th ed.) § 2186. As recently as Tansey v. Suckoneck,98 N.J. Eq. 669, the court of errors and appeals has reiterated this rule and declared that wherever it is apparent from the terms of the contract that it was preliminary and not final, and that features left unsettled are to be settled by further negotiations, specific performance will be denied. That this is the rule, counsel for complainants does not deny, but maintains that there is a complete lease to be spelled out of the terms of the above receipt, and that it is not a memorandum by which the defendant evidenced his willingness to enter into a lease. It is impossible for me to agree with this argument.
Reliance is placed by the complainants upon the pronouncement of the court of errors and appeals in Wharton v.Stoutenburgh, *Page 704 35 N.J. Eq. 266. There is quoted in their opinion the following language of Lord Westbury in Chinnock v. Marchioness of Ely, 4DeG. J. S. 645:
"I entirely accept the doctrine that if there had been a final agreement, and the terms of it are evidenced in a manner to satisfy the statute of frauds, the agreement shall be binding, although the parties may have declared that the writing is to serve only as instructions for a formal agreement. * * * But, if to a proposal or offer an assent be given, subject to a provision as to a contract, then the stipulation as to the contract is a term of the assent, and there is no agreement independent of that stipulation."
In the Wharton Case letters had passed between the parties for the leasing of land, and, later, there was a meeting at which all the terms of the lease were agreed upon and incorporated in a formal instrument, which, however, was never signed. A copy of this document was forwarded to the defendant and its receipt acknowledged by him, and he went into possession of the demised premises and retained them for a considerable period of time until a decline in prices of the iron he was taking from the complainant's land caused him to attempt a repudiation of the lease by setting up the statute of frauds. Of course, it was determined that the part performance took the transaction out of the statute. The rationale of that opinion, so far as germane to the case at bar, is that, whether or not, there has been a complete meeting of the minds depends upon all the facts and circumstances entering into the case. The distinguishing features between the case in hand and the one at bar is, that in the former the preliminary negotiations were followed by a final lease and agreement, while in the latter no such complete understanding was ever reached. The informality of the receipt copied above is of no moment, and the complainants would be entitled to the assistance of this court if it was complete in all its details.
In these days it is very unusual for the owner of a more or less valuable piece of real estate devoted to business purposes to simply say to a prospective tenant, "I will lease you *Page 705 
these premises for two years at a rental of $125," as is frequently done in ordinary dwelling-houses. The lease proper is always, or nearly always, accompanied in the same instrument by a formidable list of covenants, some binding upon the lessor, but most of them upon the lessee. For example, in this very case each of the parties prepared and submitted to the other forms of formal leases, differing utterly in their respective covenants. The one submitted by the defendant contained no less than twenty-two printed covenants, besides an acknowledgment of the broker's commission, and three covenants in typewriting. Any attempt to comply with the prayer of the bill would not result in compelling the defendant to abide by his bargain, because he never completed one. It would be a demise by the court of his land for a considerable term upon conditions imposed by the court. This would be intolerable. Applying the reasoning ofWharton v. Stoutenburgh, supra, the very preparation and submission of these leases brings the case within the opinion ofTansey v. Suckoneck, supra. It is clear, from the incompleteness of the document upon which the complainants rely, the failure to stipulate any of the usual terms and conditions to be found in leases of such properties and the subsequent action of the complainants themselves, that there was in contemplation on April 6th further requirements to be decided upon by the parties, and, therefore, that there was no such complete certain and definite understanding between the parties, either written or oral, as it is the policy of this court to compel the parties to perform.
The order to show cause should be discharged. *Page 706