The complainant invokes the auxiliary jurisdiction of this court to obtain a decree obliging the defendants to specifically perform an alleged agreement to convey to him a parcel of real estate situate on Mercer Road and Greenhouse Lane at Princeton. Basically, the cause of action must rest upon the existence of an enforceable contract, otherwise the equitable remedy cannot be operative. The relation of negotiation must be organized into that of obligation by an aggregatio mentium upon the same material and substantive matters. The bargain sought to be enforced must consist, in substance and external form, of those qualities, elements and requisites of a valid contract. There must be a consensus of minds between the parties and the terms must be definitely ascertained. A contract cannot be said to exist so long as negotiations are pending over matters which either of the parties regards as material to it. Brown v.Brown, 33 N.J. Eq. 650; Tansey v. Suckoneck, 98 N.J. Eq. 669;130 Atl. Rep. 528; Venino v. Naegele, 99 N.J. Eq. 183;131 Atl. Rep. 895; affirmed, 100 N.J. Eq. 357; 134 Atl. Rep. 920; Zukman
v. Ihle, 99 N.J. Eq. 702; 133 Atl. Rep. 779; affirmed, 100 N.J. Eq. 598; 135 Atl. Rep. 920; Levine v. Lafayette Building Corp.,105 N.J. Eq. 532; 148 Atl. Rep. 772; Stuart Wood, Inc., v.Palisades, c., Corp. 109 N.J. Eq. 401; 157 Atl. Rep. 659;Richman v. Richman, 117 N.J. Eq. 226; 175 Atl. Rep. 179.
Because of the anticipated engagements of Mr. Hangen in Washington, District of Columbia, he and Mrs. Hangen resolved to sell their property at Princeton, and to that end appropriate advertisements were inserted in one or more of the metropolitan newspapers and the property was listed for sale with several real estate brokers at Princeton, among whom was Mr. Edmund D. Cook. The price initially requested was $18,000, subsequently reduced to $15,000. It was emphasized that the purchase price must be payable entirely in cash or its equivalent. The complainant, among others, manifested a desire to acquire the premises, and on March 3d 1943, he dispatched to Mr. Cook the following communication: *Page 178 
"This will serve to confirm our telephone conversation of yesterday afternoon with reference to the property on Mercer Road and Greenhouse Drive, Princeton, New Jersey.
"May we say that we offer $12,500.00 for this property, $5,000.00 of which shall be paid in cash.
"We are enclosing at this time a certified check for $100.00 which is to represent our deposit on this property. It is understood, of course, that if our offer is accepted, this check will become a portion of our down payment, and if on the other hand our offer is not accepted, this deposit in the form of the one hundred dollar check is to be returned to us.
"This offer is being made on the provision that a final contract possessing terms that will be of mutual satisfaction can be arranged.
"Further, this offer is to terminate if not accepted by the owner within fifteen days from the date of this letter unless extended by us in writing."
That proposal was rejected by the defendants. Ensuing conferences between the complainant and Mr. Cook clothed the latter with authority to submit to the defendants increased offers not exceeding $13,750. The offers were communicated by Mr. Cook to Mr. Hangen by telephone, and subsequently Mrs. Hangen by like means informed Mr. Cook that the offer of $13,750 cash was acceptable. Other than the amount of the purchase price, none of the terms of the transaction was discussed. Mr. Cook stated to Mrs. Hangen that a formal written agreement embodying other appropriate terms should be prepared and he recommended a local attorney to render that service and sought her approval of his selection, which she gave, presupposing, as she states, that her husband would in any circumstance submit the agreement to his New York attorneys for their scrutiny. Moreover, the defendants were not aware that any deposit whatever had been made and certainly no initial down-payment was determined. The parties have never conferred. Mr. Cook has been the sole mediating agent.
The complainant had previously informed Mr. Cook that he had only $5,000 or perhaps $5,250 in cash to apply to the payment of the purchase price and that in the event of an acceptance of his offer it would be necessary for him to procure a mortgage loan of the balance. Mr. Cook did not impart that information to the defendants, contemplating that the *Page 179 
written contract would embrace a so-called "protection clause" and that upon the execution of the contract, he would embark upon an undertaking to obtain for complainant the requisite loan from some local financial institution.
Mr. Cook thereupon transmitted the following letters:
"Dear Mr. Hardy:
"This is to confirm my conversation with you relative to your increased offer of $13,750 for the Hangen House on Mercer Road and Greenhouse Drive, which offer Mr. Hangen has told me he
would accept. (Emphasis supplied.)
"According to your instructions, I am having the Agreement of Sale drawn in the name of Mrs. Jane G. Hardy, and as soon as they have been prepared, I will forward them to you for her signature.
"I am also checking with the Princeton Bank and Trust Company regarding the mortgage on the property."
"Dear Mr. and Mrs. Hangen:
"This is to confirm my conversation with Mrs. Hangen regarding Mr. Hardy's increasing the offer on your house on Mercer Road and Greenhouse Drive to $13,750 and your accepting this offer.
"I have notified Mr. Hardy and will have the Agreements of Sale drawn by Mr. Edgar Smith. As soon as these are ready for your signature, I will let you know."
The letters were signed "Edmund D. Cook."
An agreement in writing was in fact composed which contained the clause styled as the "protection clause:"
"It is understood and agreed that the Vendee will make every effort to obtain a Purchase Money Mortgage in the sum of Eight Thousand Five Hundred ($8,500.00) Dollars providing for interest at a rate not to exceed five (5) per centum per annum and in the event the Vendee is unable to obtain said Mortgage after making all reasonable efforts in relation thereto, the Vendors shall have the option of taking a Purchase Money Mortgage in said sum of Eight Thousand Five Hundred ($8,500.00) Dollars, with interest at the rate of five (5) per centum per annum, payable semi-annually, with a maturity to be agreed upon between the parties or to extend to the Vendee the right to cancel and abrogate this contract, whereupon the Vendee shall be repaid any sums exchanging hands upon the execution of this contract."
Upon exhibiting a copy of the proposed contract to Mr. Hangen, the "protection clause" immediately monopolized his attention. That condition of the projected agreement *Page 180 
became the insurmountable and vexatious obstacle which at once dissuaded him and his wife from further promoting the transaction. Their disinclination to receive a mortgage to secure any portion of the purchase price had been and was unalterable and therefore, in such a circumstance, they regarded the offer of the complainant to be of such a contingent nature as to merely imitate an option to purchase. At the final hearing, the complainant frankly acknowledged that his offer was contingent upon his ability to bag a loan for a ponderable portion of the purchase price, and evidently he did not intend to be bound unless he obtained the loan. The complainant apparently implores this court to compel the defendants to specifically perform a contract to convey dependent upon the ability of the complainant to borrow a major part of the cash purchase price. To such a provisional stipulation, the defendants have never assented. Manifestly, the provision would materially qualify the obligation of the complainant to complete the sale and its attempted infiltration into the terms and conditions of sale was neither contemplated by the defendants nor expressly or impliedly authorized by them.
The letters of Mr. Cook hereinbefore reproduced are manifestly a preliminary recital of the existing state of the negotiations and indicate clearly that a comprehensive agreement in writing (presumably containing among others the so-called "protection clause") would be tendered to the parties for their approval as the complete and final compact.
The complainant in his letter of March 3d 1943, stated: "This offer is being made on the provision that a final contract possessing terms that will be of mutual satisfaction can be arranged." This truly exposes the continued state of mind of the complainant. Mr. Cook informed the complainant in his message of March 22d 1943: "According to your instructions, I am having the Agreement of Sale drawn in the name of Mrs. Jane G. Hardy and as soon as they have been prepared, I will forward them to you forher signature." (Italics supplied.) The dispatch addressed to the defendants stated: "I have notified Mr. Hardy and will have the Agreements of Sale drawn by Mr. Edgar Smith." *Page 181 
In Gable v. English, 93 N.J. Eq. 172; 115 Atl. Rep. 374,
Mr. Justice Kalisch, delivering the opinion for the Court of Errors and Appeals, stated:
"Where a contract is sought to be established through the medium of letters between a prospective seller and a prospective buyer of real property, it must clearly and unequivocally appear from such correspondence that the offer to sell with the terms thereof were unconditionally accepted by the prospective purchaser, in order to constitute a valid contract which may be enforced by a bill for specific performance in a court of equity.Potts v. Whitehead, 23 N.J. Eq. 512; Runyon v. Wilkinson,Gaddis Co., 57 N.J. Law 420; Empire Rubber Manufacturing Co.
v. Morris, 73 N.J. Law 602."
Moreover, the alleged contract is for the sale of land and therefore embraced by the statute of frauds. R.S. 25:1-5;N.J.S.A. 25:1-5. It is now elementary that a complete contract, obligatory under the statute, may be gathered from letters, writings and other documentary evidence existing between the parties, relating to the subject-matter and substantive terms, where the writings are so interrelated that they may be fairly considered to constitute collectively the material and essential elements of the final bargain. Assuredly, one of the writings must be signed by the party to be charged or by some other person thereunto by him lawfully authorized.
Overlooking the meagerness of the writings offered in the present cause, immediately conspicuous is the deficiency of proof of any delegation of authority to Mr. Cook to make a written contract on behalf of the defendants. Indeed, upon the "listing" of the property for sale, Mr. Cook requested Mr. Hangen to sign the customary broker's agreement, but Mr. Hangen having delivered a similar instrument to another broker, declined to do so. Mr. Cook acknowledges that he had only a special authority to negotiate a sale.
Where it is sought to establish the authority of an agent to bind his principal to a sale of lands by proof of circumstances from which such authority may be inferred, the mere fact that the principal employed the agent to solicit a purchaser *Page 182 
and negotiate with him concerning the sale, does not of itself justify the inference that the agent was also clothed with authority to conclude an obligatory contract. The evidence in this cause does not disclose any additional circumstances from which more than the mere restricted authority can be implied. There is no intimation of ratification or estoppel. Milne v.Kleb, 44 N.J. Eq. 378; 14 Atl. Rep. 646; Lindley v. Keim,54 N.J. Eq. 418; 34 Atl. Rep. 1073; Stengel v. Sergeant, 74 N.J. Eq. 20; 68 Atl. Rep. 1106; Yadwin v. Arnold, 94 N.J. Law 500;110 Atl. Rep. 903; Shauinger v. Apter, 96 N.J. Eq. 302;125 Atl. Rep. 31.
I must advise a decree dismissing the complainant's bill, with costs.