The complainant prosecutes this amended cause of action in the endeavor to obtain a decree requiring the defendant Aylin Pierson to convey to him his interest and estate in certain residential premises situate in the Borough of Metuchen, Middlesex County, New Jersey. An account of this litigation would be incomplete without some transient references to the interim proceedings. The complainant by means of his original bill sought a decree which in its operative effect would encircle both Aylin Pierson and his wife Edith Pierson. The allegations of the bill were deemed upon a motion to strike to be manifestly too deficient to warrant the granting of any decree against Mrs. Pierson.
The solicitor of the complainant was aware of our equitable principle that in a suit for specific performance, a husband will not be decreed to procure his wife to join in the execution of a deed for the purpose of releasing her inchoate right of dower if she is unwilling to do so. It is also a well-established rule in our jurisdiction that neither indemnity nor abatement from the purchase price should be decreed on account of an outstanding inchoate right of dower of the wife of the vendor who has not joined in the contract to sell and who refuses to join the vendor in the conveyance, unless it is shown that the vendor has induced his wife to refuse to release her dower right. Bondarchuk v.Barber, 135 N.J. Eq. 334; 38 Atl. Rep. 2d 872.
Thus circumstanced, the complainant, with the permission of the court, filed an amended bill of complaint in which he declares his ability and willingness to acquire under the terms of the alleged contract the title of Mr. Pierson subject to the inchoate right of dower of Mrs. Pierson. "When the market is lively, if you can't buy the entire fox skin for a shilling, take the tail at the same price." However, the defendant here declines to consummate the conveyance.
An inquiry into the merits of the controversy has accordingly become necessary. It is alleged that the contractual obligation of the defendant is evidenced by four letters which are here reproduced: *Page 526 
"August 20, 1945.
Spencer Noble, Capt. U.S.A. 55 Walnut Place, Metuchen, N.J.
Dear Capt. Noble: —
I am very sorry about the delay in drawing the contract but I am still rushed so much that my work is suffering. This informal letter is to serve as an interim contract to be corrected to cover any errors or omissions.
Property: — 55 Walnut Place, 55'-0" front by approx. 105 deep.
Price: — $9,500.
Terms: — $200 paid down at time of taking possession.
Balance within twelve months.
There is to be a monthly payment of $75.00 to provide for all taxes, interest, etc. You have the option to renew the contract for another period of 12 months under the same conditions. There is a mortgage and I will be glad to show you that interest payments and tax payments are made regularly.
Very truly yours,
AP:MC AYLIN PIERSON."
 "S Noble/eok 22 August 1945
Aylin Pierson, Architect 280 Hobart Street Perth Amboy, New Jersey
Dear Mr. Pierson:
I have your letter of 20 August and it is agreeable to me.
It is my understanding that the $200.00 I am paying as a deposit, is in fact, option money for the purchase of premises within a year period, or renewal period of a year.
In the event that I do not desire to complete the purchase, this money will be forfeited as option money and there will be no further liability on my part.
In the event that I complete the purchase, the sum of $200.00, it is understood, will be credited to the principal amount of purchase.
 Very truly yours, SPENCER NOBLE Captain, Ord Dept."
"August 27, 1945
Spencer Noble, Captain, U.S.A. 55 Walnut Place, Metuchen, N.J.
Dear Captain Noble:
I have yours of the 22nd instant.
If you recall, I stressed that this was not an option. It is a Contract of Sale with no penalty to you for not taking it up except the $200 deposit.
You may renew the contract for one year on the same payment of $200 for another twelve months' extension. *Page 527 
I desire to have all of this clear on the records as I am not renting the house.
Sincerely yours,
AP:JM AYLIN PIERSON."
 "55 Walnut Place Metuchen, N.J. June 1, 1946.
Mr. Aylin Pierson 32 Elm Avenue Metuchen, N.J.
My dear Mr. Pierson:
There is no doubt in my mind as to the situation regarding premises No. 55 Walnut Place, Metuchen, where I now reside. I have a perfectly valid contract with you for the purchase of the property, free of all defect, liens and encumbrances, for the sum of $9,500, of which $200 has been paid down and is to be credited on the purchase price. Furthermore, it is my intention to hold you to the contract, under which I am in possession of the property.
I hereby designate 18 June 1946, 10 A.M. Eastern Daylight time, as the time, and Metuchen National Bank, No. 406 Main Street, Metuchen, N.J., as the place, at which title is to be closed. At the above time and place I shall be prepared to pay you in cash the balance of $9,300 due under our agreement, and I shall expect to receive from you a good and sufficient deed, properly executed by you and Mrs. Pierson, conveying the property to me, free and clear of all defects, liens and encumbrances.
Very truly yours,
 SPENCER NOBLE, Captain, Ord. Dept."
The complainant is the assignee of the alleged vendee, Spencer Noble.
Initially, it must be acknowledged that a complete contract, obligatory under the statute, may be gathered from letters between the parties relating to the subject-matter and substantive terms, where the writings are so interrelated that they may be fairly considered to constitute collectively the material and essential elements of the final bargain. Hardy v.Hangen, 134 N.J. Eq. 176; 34 Atl. Rep. 2d 642. Formality may be lacking and, indeed, the preparation of a formal agreement may be in contemplation. Wharton v. Stoutenburgh, 35 N.J. Eq. 266; Moran v. Fifteenth Ward Building and Loan Association,131 N.J. Eq. 361, 366; 25 Atl. Rep. 2d 426. The accompanying circumstances may *Page 528 
illuminate the meaning of the alleged contract. Volk v.Atlantic Acceptance and Realty Co., 139 N.J. Eq. 171;50 Atl. Rep. 2d 488.
Basically, of course, the cause of action must rest upon the creation and existence of a complete contract, otherwise the equitable remedy of specific performance is withheld. And so, the bargain sought to be enforced must consist, in substance and external form, of those qualities, elements, and requisites of a valid contract. An aggregatio mentium — a consensus of minds — is absolutely imperative and indispensable. Gable v. English,93 N.J. Eq. 172; 115 Atl. Rep. 374.
At the final hearing a catenation of circumstances was quite fortuitously divulged which has caused me gravely to doubt that the parties truly and genuinely intended to enter into any mutual and reciprocal agreement for the sale and purchase of the premises.
I have learned in my experience on the bench that everyone loves the truth, but not everyone tells it. Nevertheless, truth while many times suppressed, is never entirely strangled, and often like a torch it converts vagueness into clarity and doubt into moral certitude. How often a sense of understanding lies below the promiscuous use of words.
Frankly, I entertain in the present case the conviction that the first three letters were intended to be mere ghosts for the immediacy of the eye. They betray the subtle purposes and expose the fears of the parties in an experimental expedient to evade existing restraints ordained by authority of law for the public welfare. The ideas and real intentions of the parties were developed in private. The letters, at least those of the defendant, were composed to soothe, if occasion arose, an inquisitive governmental agency.
Now, the story that percolates through the hearing and consideration of this cause and which in my judgment is explanatory of the correspondence and the circumstances accompanying and surrounding the transaction from which this litigation has arisen.
In June, 1945, Captain Noble, an officer in the United States Army, was stationed at Raritan Arsenal in Middlesex County. He and his wife were in need of a private place of *Page 529 
abode, and they learned that the defendant was the owner of a residential property, No. 55 Walnut Place, Metuchen, which the tenant was about to vacate. They interviewed the defendant. For what purpose? I quote from their depositions: Captain Noble — "My wife and I called on Mr. Pierson to see if we could rent the property which we learned was to be vacated." "I said that my wife and I would rather rent because I did not know when I might be assigned by the Army to another area. I am a reserve officer on active duty in the U.S. Army." Mrs. Noble: "My husband told Mr. Pierson that he preferred to rent because, as an officer in the Army, he was subject to move at any time." Captain Noble: "At the end of the first conference Mr. Pierson said that he believed we could work out an agreement so that I could get a place to live and that he would like a day or two to think it over."
The defendant had in conformity with the governmental requirements registered the premises as a dwelling unit at the Area Rent Office of the Office of Price Administration, and the maximum legal rent for the dwelling was established at $75 per month.
It seems that the parties did on a subsequent occasionverbally "work out an agreement so that [the captain and his wife] could get a place to live." The latter entered into possession of the premises on or about July 2d 1945. On July 13th, 1945, they paid to the defendant $275 and thereafter made monthly payments of $75 until this controversy originated.
Although the defendant was experienced in the purchase and sale of real estate and was acquainted with the documents normally appropriate, he obviously did not know the formula by which to prepare a written agreement embracing the covenant of the occupant to pay an annual bonus of $200 in excess of the maximum permissible rent, and so in his first letter of August 20th, 1945, he tenders not only an apology for his delinquency, but "an interim contract to be corrected."
It is manifest that the captain suspected that the defendant's communication might be construed as a contract obliging him to purchase the property, and in his reply under date *Page 530 
of August 22d 1945, he promptly insisted that the agreement which they "worked out" was merely an "option." On August 27th, 1945, the defendant informed the captain that it was not intended to be an option nor was it intended to be "on the records" regarded as a lease. Alas! So it seems that neither party could recognize the progeny of their negotiations.
Time not only works wonders but sometimes mischief. The testimony disclosed that the market value of the premises continued to ascend rapidly. Although the captain expected to be assigned "at any time" to another camp or station, perhaps in the European area (he was so assigned and is now in Austria), the thought eventually traversed his mind that he could capture an opportunity to acquire a prompt financial profit, and in that endeavor he dispatched his letter of June 1st, 1946, in which he expressed his willingness to pay to the defendant $9,300 upon the receipt of "a good and sufficient deed, properly executed by you and Mrs. Pierson, conveying the property to me, free and clear of all defects, liens, and encumbrances." The defendant did not accede to his terms.
In quest of the truth, it is also prudent to consider the reasonable probabilities. It seems to me somewhat fanciful to suppose that in an exceptionally propitious period for the rental or sale of residential properties, an owner, despite the notorious demand, would agree to ostracize his property worth approximately $9,500 from the sale market for a span of two years for a modest annual consideration of $200. It is evident that the property was capable of producing ceiling rent of $75 a month and that in the present case the occupant was at liberty to vacate the premises at any time without future liability.
It occurs to me to be equally improbable that the captain amid the uncertainties of his military situs sought a contract to purchase the property.
At the final hearing the defendant denied that either a contract to sell or a lease was intended. I inquired what was intended. His resultant demeanor induced me sympathetically to rescue him from the confession of that which I am constrained to believe to be the fact. The defendant ventured *Page 531 
to enter the path of the transgressors, and the captain in his urgent situation decided passively to accompany him.
I have imparted my conception of this case, but were there to linger in my mind only an inescapable doubt that the parties truly intended to enter into a contract of the import and nature here alleged by the complainant, I would be forbidden, in the exercise of sound discretion, to advise a decree for specific performance.
The bill will be dismissed, without costs to either party.