POTTS, appellant, and WHITEHEAD, respondent.

1. An acceptance, to be good, must be such as to conclude an agreement or contract between the parties; and to do this it must, in every respect, meet and correspond with the offer, neither falling within nor going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand.

2. On a bill for specific performance, the alleged agreement consisted of an offer to sell land on certain specified terms, and the following letter: "Have twice attempted the tender of the first payment of $500 upon the

agreement made between us on the 7th December last. I will meet you &c., when I shall be ready to make tender of the money, and execute the proper agreements thereupon." *Held,* that this letter was not, either in terms or substantially, an acceptance of the offer, and concluded no contract between the parties.

---

The opinion of the Chancellor is reported in 5 *C. E. Green* 55.

*Mr. J. C. Potts,* for appellant.

*Mr. Ludlow,* for respondent.

The opinion of the court was delivered by

WOODHULL, J.

The appellant seeks to enforce the specific performance of an alleged agreement in writing for the sale of land. To show the agreement, two separate writings are relied on : the first, an offer to sell, dated December 7th, 1865, to be accepted within thirty days from the date, signed by the respondent; and the other, a letter dated January 3d, 1866, written by the appellant, accepting, as he alleges, the offer of December 7th.

The principal questions discussed before us were : 1. Whether the letter of January 3d amounted to a legal acceptance of the respondent's offer; 2. Whether it was properly communicated to the respondent; and 3. Whether, admitting its sufficiency as an acceptance, and that it was properly sent, so as to bind the respondent, the contract resulting from it is not too uncertain and incomplete in its terms to be enforced by a court of equity.

As a mere proposal or offer to sell cannot become an agreement without being accepted, and as it is not claimed that the offer in this case was accepted otherwise than by the letter of January 3d, it follows that if that letter did not amount to an acceptance there was no agreement at all between these parties, and, of course, nothing on which the appellant's case can stand.

As to what are, in general, the characteristics of a good acceptance, there seems to be very little difference of opinion.

An acceptance, to be good, must, of course, be such as to conclude an agreement or contract between the parties. And to do this, it must in every respect meet and correspond with the offer, neither falling within nor going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand. *Huddleston* v. *Briscoe*, 11 *Ves.* 583; *Carr* v. *Duval*, 14 *Pet.* 77; *McKibbin* v. *Brown*, 1 *McCarter* 13; *S. C.*, Court of Appeals, 2 *McCarter* 498; *Honeyman* v. *Marryatt*, 6 *H. L. C.* 112; *Routledge* v. *Grant*, 4 *Bing.* 653; *Kennedy* v. *Lee*, 3 *Meriv.* 441; *Hutchinson* v. *Bowker*, 5 *M. & W.* 535; *Eliason* v. *Henshaw*, 4 *Wheat.* 225; 1 *Parsons on Con.* 476, 477; *Story on Sales*, (3d ed.) 142, § 136, and cases cited *n.* 1.

If the letter of January 3d had contained simply the words, " I accept your offer;" or, " I accept the terms proposed by you;" or any other words of like import, referring distinctly to the writing of December 7th, and had stopped there, it would, without doubt, have been a good acceptance.

It is insisted on the part of the appellant, that in substance and legal effect, the letter as it is does not differ from what it would have been in the case supposed. But we cannot so regard it. The letter does not, either in terms or substantially, accept the respondent's offer. While we may fairly infer from its language that the appellant intended and expected to conclude an agreement embracing the terms proposed, we are compelled to infer also, that this was not to be done without the addition of another term not yet provided for. The time to be allowed for the payment of the large residue of the purchase money, $23,500, was manifestly understood by the appellant to be the subject of further negotiation and a future agreement.

Such being, in our judgment, the true import of this letter, we think that the Chancellor was clearly right in holding that it did not amount to an acceptance of the re-

spondent's offer, and concluded no contract between these parties.

Upon the second and third questions we express no opinion.

We are satisfied, from the evidence, that the charges made by the respondent in his answer and in his testimony, of fraud or unfair dealing by the appellant in any part of this transaction, are wholly without foundation. And equally groundless, we think, is the suggestion made by the appellant's counsel, that the time when the balance of the purchase money should be paid had been actually agreed upon before the writing of December 7th, and had been left out of that writing by mistake.

Neither the bill, nor any part of the appellant's testimony, give the least countenance to this suggestion. We are quite satisfied too, that the writing of December 7th was fairly and honestly written by the appellant, and correctly read by him to the respondent. The statements of the respondent which seem inconsistent with this conclusion we take to be the result of misconception, arising, probably, from an inadvertent blending together in his memory of two separate negotiations relating to the same matter.

Decree of the Chancellor in all things affirmed.

The whole court concurred.