THE NATIONAL NEWARK BANKING COMPANY, A CORPO-
RATION, PLAINTIFF, v. ALGERNON T. SWEENEY ET
AL., DEFENDANTS.

Submitted July 1, 1915—Decided December 15, 1915.

1. Under section 68 of the Negotiable Instruments act of 1902,
   endorsers are liable *prima facie* in the order in which they endorse
   but evidence is admissible to show that as between or among
   themselves they have agreed otherwise.
2. Where there is evidence tending to show that an agreement
   was made between endorsers for contribution, the application of
   an endorser, subsequent to the endorser who paid a note, and
   to whom the judgment had thereon was assigned, for a rule to
   show cause why the judgment should not be canceled, will be
   denied.  The liability of the parties to make contribution and
   in what proportion, cannot be tried out in such a collateral pro-
   ceeding, but direct proceedings for that purpose must be re-
   sorted to pursuant to the statute regulating the procedure in
   such cases.  *Comp. Stat.*, p. 2962, § 30.

On rule to show cause.

Before Justices PARKER, MINTURN and KALISCH.

For the rule, *Peirce & Hoover*.

*Contra, Riker & Riker*.

The opinion of the court was delivered by

KALISCH, J.   The plaintiff recovered a judgment in this
court against Algernon T. Sweeney, Francesco Megaro, An-
gelo Pagavo, Raffaele Villanova and Donato Rizzalo for $1,-
233.40 and $49.80 costs, on the 6th day of November, 1913,
on a promissory note which was as follows:

$1,200.00.          NEWARK, N. J., May 26, 1913.

Four months after date I promise to pay to the order of myself twelve hundred dollars at National Newark Banking Company.

Value received with interest.

ALGERNON T. SWEENEY.

(Endorsed)  ALGERNON T. SWEENEY,
            FRANCESCO MEGARO,
            ANGELO PAGAVO,
            RAFFAELE VILLANOVA,
            DONATO RIZZALO,
            ALGERNON T. SWEENEY.

This note was the culmination of a series of renewals. When it became due it was protested for non-payment, was sued upon and resulted in the judgment above mentioned. Subsequently, Megaro, the first endorser after the maker, paid the full amount of the judgment and costs and took an assignment of the judgment and was apparently about to enforce contribution from the other endorsers, pursuant to the statute of 1881, page 37, amending section 30 of the revised act of 1877, concerning judgments. See *Comp. Stat., p.* 2962, § 30.

The theory of the assignee evidently is that the endorsers *inter sese* are liable *pro rata* and not in the inverse order of their endorsement. At this juncture, the executor of Villanova, one of the subsequent endorsers who died after the judgment, intervened by petition with the claim that by the payment of the judgment by the first endorser the subsequent endorsers were *ipso facto* discharged, and that the judgment should therefore be canceled, at least, so far as relates to such subsequent endorsers.

A rule to show cause why the judgment should not be canceled and satisfied of record was allowed, with leave to take testimony and the matter is now here on the testimony taken under the rule.

It is first argued by counsel appearing for the rule that under the authority of *First National Bank* v. *Hoffman,* 68 *N. J. L.* 245, the petitioner is entitled to have the judgment canceled. While the case cited is a precedent for the form of procedure, to cancel a judgment that has been satisfied, it rests on certain rules of evidence as to the liability of endorsers *inter sese* that have recently been altered by statute.

The case cited was submitted to the Supreme Court April 14th, 1902, and obviously related to a note given before the passage of the Negotiable Instruments act, which act was not approved until April 4th, 1902, and did not go into effect until July 4th, 1902. *Pamph. L., p.* 616.

At the time that case was decided the law undoubtedly was that where there was no ambiguity on the face of the note, nothing was imported except the usual contract of endorsement. No parol testimony was admissible in such a case to show in what relation the endorsers stood to each other. *Chaddock* v. *Vanness,* 35 *N. J. L.* 517.

An important and material change was made in this respect by the Negotiable Instruments act of 1902.

Section 68 of that act provides: "As respects one another, endorsers are liable *prima facie* in the order in which they endorse; but evidence is admissible to show that as between or among themselves they have agreed otherwise; joint endorsers who endorse are deemed to endorse jointly and severally." *Pamph. L.* 1902, *p.* 596; 3 *Comp. Stat., p.* 3743.

This section was construed in *Wilson* v. *Hendee,* 74 *N. J. L.* 640, and *Schneider* v. *Mueller* (*Court of Errors and Appeals*), 82 *Id.* 503, and they control the legal questions raised in the present case as to the relation of the endorsers to each other. There was testimony tending to establish that the endorsers on the note had agreed with each other to divide their responsibility equally between them. Megaro and Sweeney testified that all the endorsers were present when the note was endorsed, and that it was talked of and understood between the endorsers that in the event that Sweeney did not pay, each was to pay one-quarter.

The situation, then, was this: Megaro, the first endorser, having paid the judgment, and claiming and being entitled to show, if he could, an agreement between the endorsers to share liability between them was authorized by section 30 of the act relating to judgments to issue execution against them for their proportional shares after the sum had been ascertained by a justice of this court, on notice to the parties interested. No such inquisition appears to have been applied for and had. On the contrary, the executor of Villanova is now attempting to forestall it on the ground that the order of the endorsements fixes the order of liability, and, perhaps, on the further ground that the evidence on this rule does not show that there was an agreement for contribution. The first ground has already been disposed of. As to the second, bearing in mind that the statute regulates the procedure, and that the present rule is essentially an interference with that procedure, it should be discharged and the parties relegated to the statutory inquiry if there is any question of fact in dispute.

In other words, we are now concerned only with the question whether there is competent testimony tending to establish that there is any liability existing on part of the petitioner's testator to Megaro. If there is such testimony, then the petitioner is not entitled to his motion and the rule to show cause must be discharged. For the petitioner it is contended that there is no such testimony. The argument made in support of this contention is, that since the petitioner was appearing in a representative capacity, the testimony, of Megaro and Sweeney, by which an agreement for contribution between the endorsers of the note is made to appear and the petitioner's testator's liability, was incompetent to establish such liability as against the petitioner's testator, under section 4 of the Evidence act (2 *Comp. Stat., p.* 2218), which prohibits, in case where a party sues or is being sued in a representative capacity, such party from giving testimony as to any transaction with or statement by any testator unless the representative offers himself as a witness on his own behalf, and testifies to any transaction with or a statement by

his testator or intestate, in which event the other party may be a witness on his own behalf as to all transactions with or statement by such testator or intestate, which are pertinent to the issue; that since Megaro and Sweeney were endorsers on the note, and joint judgment debtors with the petitioner's testator, they were parties to the present proceeding, and hence their testimony was incompetent. For the defendant it has been argued that this section of the Evidence act is not applicable to a proceeding like the one under review, but is strictly limited to actions at law. While we might be willing to say that the present proceeding is an action within the contemplation and meaning of the statute, we make no ruling upon it, for the reason that in the state of the evidence before us it has become wholly unnecessary. On this branch of the case, it appears that the testimony on the rule to show cause was taken before a Supreme Court commissioner. The defendant called Megaro and Sweeney as witnesses, and they testified, under objections made by counsel for petitioner to the competency of their testimony, to transactions with and statements of the testator in his lifetime. The petitioner, the testator's executor, then became a witness in his own behalf and testified to conversations had by the testator in his lifetime with Sweeney regarding the note upon which judgment was entered. Thereupon, the defendant, conceiving that the testimony of the petitioner opened the door for the admission of testimony which otherwise would have been incompetent under the section of the Evidence act above referred to, recalled Megaro and Sweeney, who were again examined in chief as to transactions had with and statements made by the petitioner's testator regarding the note upon which judgment was entered. There was no objection made by counsel for petitioner to the re-examination of Megaro and Sweeney, but simply a suggestion by him that if the testimony of these witnesses was to be retaken that counsel for petitioner ought to have leave to withdraw the testimony of the petitioner. Counsel for the petitioner thereupon made a motion for leave to withdraw such testimony, on the ground that it was irrelevant and immaterial. We think the testimony was

both relevant and material to the issue. It concerned a statement made by the petitioner's testator to Sweeney regarding the testator's relation as endorser on the note. It also related to a transaction of the testator with Sweeney regarding the note put in judgment. There is authority for the proposition that where testimony is irrelevant and immaterial to the issue a court may allow its withdrawal by the party who had introduced it. The general rule on the subject, as stated in 22 *Encycl. Pl. & Pr.* 1308, is that a party who has introduced evidence before a jury on the trial of a cause cannot be permitted to withdraw it on finding that it does not answer his purpose. See, also, *Electric Park Co.* v. *Psichos,* 83 *N. J. L.* 267.

Another difficulty which presents itself in the present proceeding is that the petitioner in his petition prays for a cancellation and satisfaction of the judgment of record. The rule to show cause is directed against the maker and endorsers of the note. That the petitioner is not entitled to have the judgment canceled as against Sweeney, the maker of the note, is too plain for argument. Megaro, as assignee, is entitled to hold the judgment against the maker in any event. And since there is competent testimony tending to show that there was an agreement for contribution between the endorsers on the note, the petitioner is not entitled to have the judgment canceled and satisfied of record as against his testator. The nature of the present proceeding is such that we are not called upon to determine the question of liability of the petitioner's testator. It is sufficient to defeat the purpose of the petitioner's application if there is any evidence tending to show liability of the petitioner's testator to make contribution. The liability of the petitioner's testator's estate to make contribution, and in what proportion, cannot be tried out in this collateral manner. Direct proceedings for that purpose must be resorted to.

The rule to show cause must be discharged, with costs.