On May 15th, 1936, the complainant became a monthly tenant in the defendant's premises, No. 417 Washington Terrace, Leonia, New Jersey. He deposited as security for rent the sum of $60, which sum was to be applied to the last two months of his occupancy of the premises. Negotiations were entered into between the complainant and the defendant for the purchase and sale of the premises.
On April 21st, 1937, the defendant, through its secretary, wrote a letter to the complainant to the following effect:
(a) That it would enter into no contract at the present time to sell the house in which the tenant was residing;
(b) That if on July 1st the tenant had $750 in cash, it would accept the same and "give [you] a mortgage for $3,250, which will be arranged by our attorney, Mr. Cook," and
(c) If, before July 1st, the Building and Loan Association should have an offer to sell the house, it would give the tenant the preference to purchase if he could produce the cash at that time.
On June 12th, 1937, the complainant wrote to the defendant association and stated that he would exercise the option to buy the premises pursuant to the terms stated in the letter of the Building and Loan Association dated April 21st, 1937, and in his communication said, "I now offer to make the purchase at $4,000, pay down $750 and give a mortgage for the balance of the price in the sum of $3,250."
On June 15th, 1937, the defendant gave the complainant two months' written notice to vacate the premises.
The association's counsel, Joseph Cook, on June 16th, 1937, in behalf of the association, wrote the complainant "that the contract will be ready for signing at my office at the above address on Monday, June 21st, next, at 4:00 P.M. As per your letter, it will be necessary for you to be present with the sum of $750 in cash, or a certified check."
On June 21st, 1937, Mario Pisani, representing Hobart S. Bird, a New York attorney, who was then the complainant's counsel, appeared at Cook's office and tendered a certified check for $40, and, at the same time, stated that the *Page 105 
aforesaid sum of $60, given as security for the rent above mentioned, should be added to the certified check of $40, which was to be considered as a payment of $100 on account of the purchase price of the premises. Pisani further stated that the balance would be paid upon closing of title. Cook returned that check of $40, and wrote to the complainant's attorney (1) that the requisite down payment was $750; (2) that the sum of $60 security had been reduced to $30, as a month's rent became due June 15th, and had not been paid; and (3) that he, Cook, had explained to the complainant, Giovanola, on several occasions, that a purchaser for the premises had been obtained who had already deposited the sum of $750 with the association; and that the sale was to be consummated at the earliest possible moment, unless the complainant, Giovanola, met the terms of the prospective purchaser.
On June 29th, 1937, eight days after the last mentioned letter was written, the tenant offered, by his aforesaid attorney, to pay the $750.
The complainant contends that these communications "spell out" a contract, and, consequently, he is entitled to the specific performance of the same. The defendant argues to the contrary, and says that no contract of sale was ever made by the parties hereto.
We find in the first paragraph of the defendant's letter of April 21st, 1937, to the complainant, that "We will enter into no contract with you at the present time to sell the house in which you now reside." The paragraph following states, that if on July 1st, the complainant has $750 in cash, such sum would be accepted, and a mortgage for $3,250 would be taken for the balance of the purchase price. The same letter also states that if an opportunity to sell the property arose, the preference would be given to the complainant.
While there appears to have been an offer made by the defendant, the question presents itself — was there an acceptance thereof by the complainant? The acceptance of the offer required the payment of $750 in cash on July 1st. Certainly, if there were no acceptance of the offer, and there were *Page 106 
no consideration for it, the offer could be withdrawn or revoked at any time prior to acceptance. Bailey v. Grover (1927),237 Mich. 548; 213 N.W. Rep. 137.
The letter of June 16th, 1937, written by Joseph Cook, counsel for the association, referred to in paragraph 7 of the bill of complaint, and received in evidence, upon the complainant's offer, contains, among other things, the following: "It will be necessary for you to be present with the sum of $750 in cash, or a certified check." This quotation indicates a counter-offer before the acceptance of the original offer. Neither the complainant nor anyone for him, appeared at the time and place fixed, with the sum mentioned in the letter of June 16th. Instead, Pisani appeared with a letter dated June 21st, 1937, from Attorney Bird, complainant's counsel, which reads "I am enclosing a certified check to the order of the Building and Loan Association for $40, and he authorizes the use of the additional sum of $60 deposited with the association — and the two sums, making $100, is hereby paid as the down payment upon a contract for such purchase. The balance of the cash payment will be payable on delivery of the deed at the closing, which date should be fixed, to give me a reasonable time to make a search of title, say, twenty days." This last communication was not in compliance with the counter-offer made in the communication of June 16th, 1937. It does not even appear that the required cash payment of $750 would be made on, or prior to, July 1st. There is in no sense an unequivocable assent to the terms of the counter-offer.Potts v. Whitehead, 23 N.J. Eq. 512, where the court held:
"An acceptance, to be good, must, of course, be such as to conclude an agreement or contract between the parties. And to do this, it must in every respect meet and correspond with the offer, neither falling within nor going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand."
The situation appears to be, that the letter of April 21st contained no offer which would "spell" a contract by immediate acceptance; while the letter of June 12th contained an *Page 107 
offer. It was rejected. A counter-proposition was made in the letter of June 16th. The June 16th offer was not met with an acceptance corresponding with the offer.
In Brown v. Brown, 33 N.J. Eq. 650, 657, the court of errors and appeals stated:
"A specific performance will not be decreed unless the existence and terms of the contract be clearly proved. It must be shown that a contract has been concluded. If it be reasonably doubtful whether the contract was finally closed, equity will not interfere by decreeing a specific performance. Ridgway v.Wharton, 6 H.L. Cas. 238; Brewer v. Wilson, 2 C.E. Gr. 182;Potts v. Whitehead, 5 C.E. Gr. 85. Nor will it interfere when the evidence leaves the agreement as to any of its terms in uncertainty. Clow v. Taylor, 12 C.E. Gr. 418; Cooper v.Carlisle, 2 C.E. Gr. 530."
In Wilson v. Windolph, 103 N.J. Eq. 275, the court of errors and appeals held as follows:
"Specific performance will not be decreed unless the existence and terms of the contract be clearly proved. If it be reasonably doubtful whether the contract was finally closed, equity will not interfere."
In Gable v. English, 93 N.J. Eq. 172, the court of errors and appeals, in affirming the dismissal of a bill for the specific performance of a contract alleged to have been made through the medium of letters between the parties, said:
"Where a contract is sought to be established through the medium of letters between a prospective seller and a prospective buyer of real property, it must clearly and unequivocally appear from such correspondence that the offer to sell with the terms thereof were unconditionally accepted by the prospective purchaser, in order to constitute a valid contract which may be enforced by a bill for specific performance in a court of equity.Potts v. Whitehead, 23 N.J. Eq. 512; Runyon v. Wilkinson,Gaddis Co., 57 N.J. Law 420; Empire Rubber Manufacturing Co.
v. Morris, 73 N.J. Law 602."
Again, referring to the letter of April 21st, 1937, it is unequivocally stated "that no contract will be entered into at the present time * * *. If, however, on July 1st, you *Page 108 
have $750 in cash, we will gladly accept same and give you a mortgage for $3,250, which will be arranged by our attorney, Mr. Cook." That communication evidences a willingness to negotiate a future bargain. By no stretch of the imagination, could it presently be converted into a contract by acceptance. Isham v.Therasson, 53 N.J. Eq. 10.
The acceptance of the offer could be effected only by the payment of $750 in cash on July 1st. The complainant contends that his letter of June 12th, 1937 (schedule C annexed to the bill of complaint and received in evidence), had the effect of binding the defendant on that date to convey the premises to the complainant. The letter said "I have exercised the option to buy. I now offer to make the purchase at $4,000, pay down $750 and give a mortgage for the balance of the price in the sum of $3,250." That communication was answered by the one above referred to dated June 16th, 1937, written by Cook, the defendant's attorney.
The third paragraph of the defendant's letter of April 21st, in which it is stated "we shall give you preference, that is, providing you have the cash at the time that we have a buyer," indicates that the defendant had a buyer, and afforded the complainant the opportunity to purchase; but, presumably, the complainant did not "have the cash."
Sometime in May, 1937, a real estate agent presented the complainant with a letter from the defendant association, requesting him to permit a prospective purchaser to inspect the house.
On May 29th, 1937, the complainant was served with a notice to quit, and was told that the house was sold. Then later, on June 12th, the complainant, by his attorney, Hobart S. Bird, wrote the letter which was delivered by Pisani to Attorney Cook.
The American Law Institute Restatement of the Law ofContracts states the following:
"Where an offer is for the sale of an interest in land or in other things, if the offeror, after making the offer, sells or contracts to sell the interest to another person, and the offeree acquires reliable information of that fact, before he has exercised his power of creating a contract by acceptance of the offer, the offer is revoked." (Section 42.) *Page 109 
To the same effect is Williston on Contracts §§ 55 and 57, and Isham v. Therasson, supra.
The defendant contends that the notice of May 29th, 1937, which is the notice to quit, in itself, was a revocation or withdrawal of any or all offers contained in the defendant's letter of April 21st, 1937.
The correspondence summarized, appears to be as follows:
"We will enter into no contract at the present time." (Letter of April 21st, 1937.)
"Please make an appointment for the signing of the contract." (Letter of June 12th, 1937, from complainant to defendant.)
"The contract will be ready for signing * * *." (Letter of June 16th, 1937, from Joseph Cook to complainant.)
"* * * with instructions to close the contract for purchase * * *. Please send the contract executed by the Association and I will sign for Mr. Giovanola as attorney-in-fact and return to you." (Letter from Hobart S. Bird, attorney for complainant, to Joseph Cook, dated June 21, 1937.)
The last cited communication from Attorney Bird to Attorney Cook, dated June 21st, 1937, shows that no contract had yet been "closed." It is stated in Donnelly v. Currie Hardware Co.,66 N.J. Law 388, that —
"If it appears that the parties, although they have agreed on all the terms of their contract, mean to have them reduced to writing and signed before the bargain shall be considered as complete, neither party will be bound until that is done, so long as the contract remains without any acts done under it on either side."
See, also, Water Commissioners v. Brown, 32 N.J. Law 504
(at p. 510).
The testimony is bare of any indication that the alleged acceptance by the complainant was followed with a "tender." The complainant stated that he was ready, able and willing to pay the $750 on June 29th, 1937. The evidence is likewise bare of any testimony indicating that the complainant is "now able, or ready, or willing" to make the cash payment.
Counsel for the defendant stresses the point that there was no consideration to the alleged offer in the letter of April 21st, 1937, and that, consequently, if that communication be *Page 110 
considered a promise, it must, therefore, be held to be nudumpactum, and revocable at will. He contends that the service, on May 29th, of the notice to vacate, on the complainant, and the communication to him of the fact that the property was sold to another, effectively revokes any offers, had any been made.
I quite agree with counsel in his contention that the service of the notice amounted to a revocation. I shall advise an order dismissing the bill.