74 N.J. Super. 71 (1962)
180 A.2d 524
LOOMAN REALTY CORPORATION, A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
THE BROAD STREET NATIONAL BANK OF TRENTON, A NATIONAL BANKING CORPORATION, DEFENDANT-RESPONDENT, AND GREEN ROSE ASSOCIATES, INC., A CORPORATION OF NEW YORK, INTERVENING DEFENDANT.
LOUIS GRAFF AND EMANUEL LERMAN, PLAINTIFFS-APPELLANTS,
v.
THE BROAD STREET NATIONAL BANK OF TRENTON, A NATIONAL BANKING CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 1961.
Decided April 19, 1962.
*74 Before Judges GOLDMANN, FOLEY and BARRETT.
Mr. Nathan N. Schildkraut argued the cause for appellants (Messrs. Kahn, Schildkraut & Levy, attorneys).
Mr. John J. Connell argued the cause for respondent (Messrs. Wicoff & Lanning, attorneys).
Mr. Allan H. Klinger argued the cause for intervening defendant-respondent (Messrs. Milton, Augelli & Keane, attorneys).
The opinion of the court was delivered by FOLEY, J.A.D.
Looman Realty Corporation, and Louis Graff and Emanuel Lerman, appeal from the dismissal of consolidated actions against defendant Broad Street National Bank of Trenton and intervening defendant Green Rose Associates, Inc., at the conclusion of a plenary hearing. The action was for specific performance of an alleged contract *75 to sell the Broad Street Bank building on East State Street, Trenton, or, in the alternative, for damages for breach thereof. Defendant bank contended that the negotiations for a contract of sale to plaintiffs had never been completed and that the property in question has been sold to the intervening defendant.
A prior appeal culminated in the remanding of the case for trial. Looman Realty Corp. v. Broad Street Nat. Bank of Trenton, 32 N.J. 461 (1960). The issues on which a plenary trial was ordered were:
"[W]hether the transaction had become sufficiently definite or yet remained in the preliminary negotiation phase, whether the existence of a binding contract was intended to rest upon the execution of a formal contract of sale, whether the defendant actually accepted the alleged offer or whether the acceptance, if actually made, was ever sufficiently communicated to plaintiff." 32 N.J., at p. 475.
The import of the opinion of the trial court rendered on the remand is that the alleged offer and acceptance were in fact but parts of the preliminary negotiations, and consequently a binding contract between the parties did not come into existence.
Plaintiffs urge four grounds of error: (1) Green Rose Associates was improperly allowed to intervene; (2) a contract for the sale of the property by the bank to Green Rose Associates was erroneously admitted in evidence; (3) plaintiffs proved a binding contract on which specific performance should have been granted; and (4) even if the contract was not certain enough to be enforced specifically, it was sufficiently certain in its terms to entitle plaintiff to an award of damages for its breach.
Briefly, the facts show that negotiations to purchase the bank building covered some four months and that the bank's board of directors had considered three offers (with different terms) of $1,600,000 for the building. The first offer was made by one Robilotto, a real estate broker, on December 27, 1958. No action was taken on this offer, and it expired by its own terms on January 7, 1959. On January 5, 1959 *76 one Charles Schragger, a real estate broker and a member of the bank's board of directors, approached plaintiffs Graff and Lerman who, either individually or through companies they controlled, owned property adjoining the bank building. By letter of January 6, 1959 plaintiffs were informed by Schragger, in his capacity as broker, of the terms that the bank's building committee had decided to recommend to the board of directors. This letter contained the post-script:
"P.S. I am sure that based on your own past experiences with banks that you will understand that the above proposition is subject to the approval of the entire Board of the Bank."
An income and expense statement was also sent to plaintiffs at that time. On the afternoon of January 6 plaintiffs met with a few of the directors of the bank and some of the terms of the purchase were discussed. On January 9, 1959 plaintiffs gave Schragger a check for $10,000 to be enclosed with the formal offer. On January 12 the board met and appointed a three-man committee, consisting of board members Fell (president of the bank), Volpe and Williams, to negotiate for the sale of the building. On January 14 a letter, signed by Schragger as president of his real estate company and approved by Graff and Lerman, was sent to the bank. This is the offer upon which plaintiffs rely. The offer covers the price ($1,600,000), down-payment, financing, deposit, lease-back, parking area rent, heat and electricity, rental of the roof sign, installation of new elevators, modernization of lobby, cost of title policy and search, and date of expiration of the offer. This latter term noted that the offer was "subject to acceptance by Monday, January 19, 1959," and was confirmed by a telegram sent on January 17, 1959 to Schragger. Many of the terms were referred to only in a general way.
On January 16, 1959 the committee met to consider the offer, but no action was taken. On January 19, 1959, and before the bank board met, tentative approval was given to *77 plaintiffs' offer by the committee. At the board meeting the following action was taken (as it appears in the minutes of the board):
"Upon motion duly made, seconded and carried, approval was given to the recommendation of the committee, consisting of Messrs. Fell, Volpe and Williams, that we accept the offer to purchase the Bank building at 143-147 E. State Street, substantially upon the terms and conditions contained in the letter of Chas N. Schragger, Inc. dated January 14, 1959, addressed to Mr. Scott M. Fell, President. It is further recommended that acceptance of the terms are [sic] subject to the execution of a formal contract to include miscellaneous details to be agreed upon by the parties."
There was a factual dispute whether news of this action was communicated to plaintiffs on the 19th or 20th of January, by either Charles Schragger or his brother Edward. The trial court found as a fact that Edward made the call for his brother on the 20th, and that this call was made without the authorization of the board, but rather as a broker informing his client.
On January 21, 1959 the offer from Green Rose Associates was received, and at the January 26 meeting of the board it was noted that debatable questions had arisen concerning the status of plaintiffs' offer. The matter was referred to the bank's counsel, who on February 2, 1959 issued an opinion letter informing the board that it was not bound by any prior action taken and that it could still consider further offers. At the February 2, 1959 bank board meeting the committee recommended acceptance of the Green Rose offer, and this recommendation was adopted unanimously, provided no further offers were received by February 3, 1959. On February 4, 1959 a newspaper article appeared in a local paper, the Trentonian, noting the announcement of the proposed sale. When plaintiffs saw this article, and after being informed of the board's action the day before, they sent a telegram on February 5, 1959 raising their offer to $1,700,000 ($320,000 cash, and a promise to indemnify the bank against damages).
*78 No further action was taken on plaintiffs' offer, and the minutes of the board reflect the progress of the Green Rose contract up to the final authorization of sale to that company on April 20, 1959.

I.
Plaintiffs urge that Green Rose was improperly permitted to intervene as a party defendant. Green Rose applied for intervention, after the first appeal, on July 5, 1960, and the motion was granted on September 9, 1960 by the trial judge. Although Green Rose applied for intervention under both R.R. 4:37-1 (intervention of right) and 4:37-3 (permissive intervention), no mention was made under which rule intervention was allowed. No application for leave to take an interlocutory appeal was made by plaintiffs after the order allowing intervention, and the issue of the propriety of the order was not included in the pretrial order. Since this is the first opportunity plaintiffs have to test the correctness of the court's ruling, the issue will be adjudicated.
As was said in Salitan v. Magnus, 48 N.J. Super. 168, 171 (App. Div. 1957), affirmed 28 N.J. 20 (1958):
"The law leaves it largely to the discretion of the trial court whether to grant or deny a motion for leave to proceed against third-party defendants. [citing cases]; cf. last sentence of R.R. 4:37-3. * * *"
The similarity between the third-party defendant test and the one under consideration was noted in the Supreme Court opinion, 28 N.J., at page 26 (1958). The test is "whether the granting of the motion will unduly delay or prejudice the rights of the original parties." It cannot be said in this case that the trial judge abused his discretion, especially in view of the policy of R.R. 4:37. As was said in Korff v. G. and G. Corp., 21 N.J. 558, 567 (1956):
"* * * [B]y this time it must be well known that our courts are firmly committed to the enlightened policy which points generally *79 to the joinder of all matters in controversy between all of the parties in a single proceeding for just and expeditious disposition at one time and place."
In light of plaintiffs' declared intention to hold Green Rose liable for tortious interference with their contractual relations with the bank, it was proper to permit Green Rose to intervene so that plaintiffs would be bound vis-a-vis Green Rose by a determination that there was no contract. If intervention had not been permitted, plaintiffs would have received, in effect, two chances to prove the same facts. Cf. Yanow v. Seven Oaks Park, Inc., 15 N.J. Super. 73, 78-79 (Ch. Div. 1951).

II.
The pretrial order of November 3, 1960 notes that by consent plaintiffs introduced exhibit P-7 (P-17 at the trial), the contract between the bank and Green Rose. Plaintiffs now claim that the admission of this contract was error, as it had only been offered by plaintiffs to support their amended claim against Green Rose for malicious interference with plaintiffs' contractual relationship. Green Rose in its brief asserts that the motion to permit this amendment had been heard and decided on October 28, 1960, five days before the pretrial conference, although the order disallowing plaintiffs' claim against Green Rose was not signed until November 3, 1960. Whether or not this was so, when plaintiffs sought to withdraw the exhibit the court might have considered the fact that plaintiffs had offered the exhibit, and that they had not moved for an amendment of the pretrial order until late in the trial. Under R.R. 4:29-1(b)(9) the pretrial order contains, in paragraph 9, "A list of the exhibits marked in evidence by consent." At the trial plaintiffs contended that the admission into evidence only admitted the authenticity of the contract, but defendant argued, and the court ruled, that once the exhibit was in evidence, it could be used by either party. *80 In this case the exhibit was used for a comparison of items that defendant alleged should have been agreed upon (if there was to be an enforceable contract) with those actually covered in the alleged contract between plaintiffs and the bank. The court, in its opinion, used the exhibit for this purpose.
Under both R.R. 4:29-1 and R.R. 4:15-2 the trial court is granted power to amend the pretrial order if "evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings and pretrial order." However, although the evidence here was objected to on the basis that it was not within the issues as framed, the evidence in fact had already been admitted. If the contract with Green Rose was irrelevant and immaterial, the court should have permitted it to be withdrawn, even after being entered into evidence; but if the contract was relevant and material, plaintiffs should not have been permitted to remove it from the case. As was said in National Newark Banking Co. v. Sweeney, 88 N.J.L. 140, 145 (Sup. Ct. 1915):
"* * * There is authority for the proposition that where testimony is irrelevant and immaterial to the issue a court may allow its withdrawal by the party who had introduced it. The general rule on the subject as stated in 22 Encyc. of Pl. & Ev. p. 1308, is that a party who has introduced evidence before a jury on the trial of a cause cannot be permitted to withdraw it on finding that it does not answer his purpose."
See also France v. Lehigh Valley Railroad Co., 97 N.J.L. 474, 478 (E. & A. 1922).
Also pertinent is the statement in Stoelting v. Hauck, 32 N.J. 87, 103 (1960), that:
"There is no doubt that it is generally within the discretion of the trial court to exclude remotely relevant evidence whose probative value is offset by the danger of undue prejudice, unfair surprise, undue consumption of trial time, or the possible confusion of issues attendant on the introduction of collateral matters [citing cases]. This discretion to exclude evidence should be exercised, however, only where its probative value is clearly outweighed by *81 the dangers its introduction would create. The search for truth is ordinarily best served by the fullest disclosure of relevant facts and circumstances, * * * and any evidence which would aid the jury in that search, unless some specific rule forbids it, should ordinarily be admitted."
As was noted below, the sale of a building for over $1,500,000 is not an everyday problem faced by the courts, and it was significantly relevant and material that it took "articles of agreement" as detailed as those in trial exhibit P-17 to satisfy the parties to the later sale. Of course, the court below was bound to recognize the self-serving nature of the agreement, since it was entered into well after the Looman Realty suit was underway. But bearing this reservation in mind, the agreement became a useful compendium for the court of items a buyer and seller of such property would require to be set out and agreed upon before it could be said that a formal contract was completed. In line with the above-quoted policy set forth in the Stoelting case, there was no error in refusing plaintiffs permission to withdraw the Green Rose contract from evidence.

III.
The questions that lie at the heart of this case are whether plaintiffs' January 14 letter and the bank's January 19 resolution were an offer and acceptance.
From the language of the letter sent by plaintiffs, there appears to be little doubt that had the bank written, simply, "We accept your offer upon the terms contained therein," there would have been a binding contract. The bank notes in its brief that no discussion had been had concerning a number of issues. Most of these excluded items would be implied by law (e.g., the disposition of fixtures), or an option given to one of the parties to do what it desired (e.g., the delivery of a bargain and sale deed or a warranty deed would be at the bank's option). Cf. Volk v. Atlantic Acceptance & Realty Co., 139 N.J. Eq. *82 171, 174 (Ch. 1947), affirmed o.b. 141 N.J. Eq. 364 (E. & A. 1948). Lumping all of these items with the ones included specifically in the offer, the omitted items that required specific agreement appear to be insignificant, and we are satisfied that the letter of January 14 constituted a valid, subsisting offer.
The real question is whether the board's resolution of January 19 was an "acceptance." Once the excess verbiage is cut from the resolution, it reads:
"* * * approval was given to the recommendation of the committee * * * that we accept the offer to purchase the Bank building * * * substantially upon the terms and conditions contained in the [plaintiffs'] letter * * *. It is further recommended that acceptance of the terms are [sic] subject to the execution of a formal contract to include miscellaneous details to be agreed upon by the parties."
As noted in Restatement, Contracts, § 58 (1932), an acceptance must be "unequivocal" or, as noted in 1 Williston, Contracts (3d ed. 1957), § 72, "positive and unambiguous." The acceptance "must comply exactly with the requirements of the offer." Restatement, Contracts, § 59 (1932); Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 539 (1953). If the purported acceptance adds qualifications, it is a rejection, Restatement, supra, § 62; Williston, supra, § 77; Potts v. Whitehead, 23 N.J. Eq. 512, 514 (E. & A. 1872); Bardusch v. Hofbeck, 139 N.J. Eq. 327, 328 (Ch. 1947). Also, according to the modern "objective" theory of contracts, the mental assent of the parties is not necessary, except where there is ambiguity in the offer or acceptance, and in such case there is a contract only if both parties intended that the same meaning be given to the ambiguous terms. Restatement, supra, § 71. In the usual case where the meaning of the language used is unambiguous, a mental reservation of a party as to the effect of his words is not material. Restatement, supra, § 71, comment (a); Williston, supra, § 66; Friedman v. Tappan Development Corp., 22 N.J. *83 523, 531 (1956); Leitner v. Braen, 51 N.J. Super. 31, 38-39 (App. Div. 1958).
In the resolution in question the use of the words "approval was given to the recommendation of the committee * * * that we accept the offer * * *" could be taken to mean an acceptance at that time, Volk v. Atlantic Acceptance & Realty Co., supra, or in the future, Shaw v. Woodbury Glass Works, 52 N.J.L. 7, 9 (Sup. Ct. 1889), affirmed o.b. 53 N.J.L. 666 (E. & A. 1889). We, therefore, conclude that the language used is ambiguous and evidence of intention relevant. The two qualifications contained in the resolution, that the offer would be accepted "substantially upon the terms and conditions contained" in plaintiffs' offer, and "that acceptance of the terms are [sic] subject to the execution of a formal contract to include miscellaneous details to be agreed upon by the parties," strongly evince the intention of the board not to be bound at the time the resolution was passed  disregarding for the moment the questions of the communication of the acceptance and the lapse of the offer.
In Comerata v. Chaumont, Inc., 52 N.J. Super. 299, 305 (App. Div. 1958), it was noted that:
"* * * [T]he fact that parties who are in agreement upon all necessary terms may contemplate that a formal agreement yet to be prepared will contain such additional terms as are later agreed upon will not affect the substance of the contract as to those terms already unqualifiedly agreed to and intended to be binding. 1 Corbin on Contracts (1950), § 30, p. 83."
Therefore, the mere fact that there were minor details to be agreed upon in the future would not preclude the court from finding a contract. But where the acceptance is made "subject to" the execution of such a formal contract, such acceptance is noted by Williston to be conditional and of no effect, 1 Williston, supra, § 77, p. 253. Reading the resolution as a whole, it appears that the intention of the board was to approve in a general way plaintiffs' proposal *84 as presented by the committee. However, the resolution does not reflect an intention by the board to be bound to a sale involving over $1,500,000 without a formal contract incorporating all of the necessary terms.
Plaintiffs have cited numerous cases where courts have found the terms agreed upon sufficient to have bound the parties. In those cases, however, the subject matter did not require as detailed a contract as here. Compare Trustees of First Presbyterian Church in Newark v. Howard Co. Jewelers, 12 N.J. 410, 413-414 (1953).
On plaintiffs' side, however, is the fact that their proposal was clearly intended by them to be an offer, and a deadline of January 19 was set for the bank's answer. The resolution of the board on the 19th might, when viewed along with the deadline, have appeared to be an acceptance, since the bank could not have intended to accept an offer at some future date, when the terms had been agreed upon, which would not be in existence after the 19th. Be this as it may, the board, from the import of the resolution it passed, must have assumed that the offer would be resubmitted after the 19th, at which time the details would be agreed upon.
Plaintiffs urge that the fact that the board was unsure of the legal relationship it had created  shown by its request for an opinion from its counsel  demonstrates that it must have intended to have accepted plaintiffs' offer. But, as was noted earlier, a party is bound by the unambiguous meaning of its words; and the board, even though it did not intend to create a binding obligation, could well have had doubts as to the legal effect of its actions. The fact that the bank's counsel in the original trial of this action resorted to what then was conceived to be an impregnable argument  that there was no contract (the defense of the statute of frauds under the now defunct rule of Follender v. Schwartz, 107 N.J. Eq. 451 (E. & A. 1930), overruled in the prior appeal of this action, supra)  will not now be permitted to prejudice defendants. Placing *85 these various considerations in balance we are satisfied that the resolution did not constitute an acceptance.

IV.
It is true that "a lesser degree of certainty will be tolerated in awarding damages for the breach [of a contract], as distinct from relief by way of specific performance," Heim v. Shore, 56 N.J. Super. 62, 73 (App. Div. 1959), but a contract must still be found. As was noted in Alnor Construction Co. v. Herchet, 10 N.J. 246, 250-251 (1952), in law an action for breach of contract is founded upon a mere nonperformance; but in equity the fact of nonperformance is not enough, and a clear showing of all the terms must be made before specific performance will be decreed. In both actions the contract essentials of an offer and acceptance must be shown, and when either ingredient has not been proved, neither forum is available for the particular remedy sought.

V.
Finally, plaintiffs assert that defendant bank should not have been awarded costs because of alleged prior unconscionable conduct in a matter unrelated to this suit. Ordinarily, costs are awarded at law to the prevailing party, Duffy v. Bill, 32 N.J. 278, 295 (1960); and in equity costs are allowable at the court's discretion "according to the reason and justice of the cause." In re Caruso, 18 N.J. 26, 38 (1955). Where the facts of the case, even if collateral to the cause or defense asserted, show that the award of costs (or counsel fees) would "work injustice or oppression," such award will not be made. Benton v. Kernan, 127 N.J. Eq. 516, 517 (Ch. 1940), modified on appeal, 130 N.J. Eq. 193, 202 (E. & A. 1941).
In the present case, and upon the facts before us, we see no reason to interfere with the award of costs.
Affirmed.